

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-23-2004

# USA v. Rutland

Precedential or Non-Precedential: Precedential

Docket No. 03-3915

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Rutland" (2004). *2004 Decisions.* Paper 540.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/540

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-3915
_____

UNITED STATES OF AMERICA

v.

CHRIS RUTLAND

Christopher H. Rutland,

Appellant

_____

On Appeal from the
United States District Court
for the District of New Jersey
(D.C. No. 02-cr-00494-01)
District Judge:
Honorable Dickinson R. Debevoise

_____

Argued: March 29, 2004

Before: ALITO, FISHER
and ALDISERT, Circuit Judges.

(Filed : June 23, 2004)

Kenneth W. Kayser (Argued)
P.O. Box 2087
Livingston, NJ 07039
    *Attorney for Appellant*

George S. Leone
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102

Glenn J. Moramarco (Argued)
Office of United States Attorney
Camden Federal Building & Courthouse
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101
    *Attorneys for Appellee*

_____

OPINION OF THE COURT
_____

FISHER, Circuit Judge.

Defendant Christopher H. Rutland appeals from his judgment of sentence, arguing that it was unfairly prejudicial to allow the government's exceptionally-qualified handwriting expert to testify to the ultimate issue of authorship of key documents. The Advisory Committee Note to Rule 403 of the Federal Rules of Evidence states, unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." It is not unfairly prejudicial to allow an expert to testify to the ultimate issue. Jurors may properly take an expert's impressive experience and credentials into account when determining the weight of the expert's testimony. Therefore, we will affirm the decision of the district court.

I. Background

Rutland was a financial advisor with Citicorp Financial Services when he met Helen Constans, an elderly widow, in

1990. Constans trusted Rutland to invest her money, and Rutland had access to Constans' financial information, including the numbers and locations of her bank accounts as well as her social security number. Rutland later prepared Constans' tax returns.

Constans was eventually hospitalized, and later placed in a long-term care facility in September of 1995. Her niece, Dorothy McCosh, attempted to locate and sort Constans' financial documents. McCosh found an annuity statement that listed Barbara Grams as the annuitant. McCosh did not know anyone by the name of Grams. Because McCosh knew that Rutland had been Constans' financial advisor, McCosh twice contacted Rutland. Although Rutland and Grams had been dating since 1987, Rutland claimed each time that he did not know Grams, and that the annuity statement that listed Grams as the annuitant must have been a clerical error.

Rutland and Grams defrauded Constans of more than $637,000. They bought luxury automobiles, built a home in Arizona, and took vacations in Europe, Las Vegas, Florida, and the Carribean with Constans' money. They perpetrated the fraud by forging Constans' signature on multiple financial forms, including: change of address forms changing Constans' address to Rutland's or Grams' address; change of ownership forms transferring ownership of Constans' financial accounts to Rutland or Grams; documents to open accounts naming Grams as a joint owner with Constans; and forging checks drawn on Constans' account made payable to Rutland or Grams.

Rutland and Grams were each charged with one count of conspiring to obtain money and property through a fraudulent scheme, in violation of 18 U.S.C. § 371.

The district court held a *Daubert*[1] hearing to determine the qualifications of both the government's handwriting expert and the defendants' expert, a critic of the field of handwriting analysis. The district court found that both experts were sufficiently qualified to testify at trial as expert witnesses.

Prior to trial, Rutland filed a motion *in limine* to prevent the government's handwriting expert from opining regarding the authenticity of Constans' signature on the documents completed by Rutland and Grams. The district court denied the motion.

At trial, the government's handwriting expert testified regarding his extensive qualifications and impressive past experience.[2] Then, he explained

---

[1]*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[2]The government's handwriting expert, Gus Lesnevich, testified that he had been employed as a forensic document examiner, or a handwriting expert, for approximately 34 years. He began working in this field while serving in the

background information and techniques used in handwriting analysis to provide the

United States Army, and worked under the direct supervision of senior document examiners. He completed a two-year Department of Defense program, and was certified as an examiner of questioned documents.

After leaving the Army and briefly working in private practice, Lesnevich was recruited by the Secret Service. He became the senior document examiner for the Secret Service. He eventually left the Secret Service, and has been employed in the private sector since 1981. He had testified as an expert for approximately 32 years in approximately 500 criminal and civil cases.

Lesnevich is a member of several professional associations and is certified by the Department of Defense and the American Board of Forensic Document Examiners. Lesnevich has analyzed documents for the governments of the United States, South Korea, South Vietnam, Australia, New Zealand, Great Britain, and France. During Rutland's trial, Lesnevich testified about some of the prominent parties involved in cases he worked on as a handwriting expert: the Iran-Contra Affair, Oliver North, Richard Secord, Caspar Weinberger, Michael Milken, Leona Helmsley, Imelda Marcos, the office of Kenneth Starr, and organized crime cases.

Lesnevich has testified in both civil and criminal cases, for prosecutors as well as defense attorneys.

jury with tools to reach their own conclusions about the authenticity of the contested signatures. Ultimately, the expert applied his knowledge and opined that the signatures were forgeries.

The defense expert attacked the general reliability of handwriting analysis.

The jury convicted Rutland and Grams. The district court sentenced Rutland to 51 months imprisonment and ordered him to make restitution of $553, 867. This timely appeal followed.

## II. Discussion

The issue before this court is narrow – whether expert opinion testimony should reach the ultimate issue when the expert has exceptionally impressive credentials. Rutland argues that in light of the expert's credentials and experience in high-profile cases, "the probative value of his opinion on authorship was substantially outweighed by the danger that the jury would accept his opinion based on his extraordinary experience rather than on his underlying analysis... ." Rutland contends that when the district court permitted the expert to opine that the contested signatures were not signed by Constans, the probative value of the testimony was substantially outweighed by prejudice to the defendant.

The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction of this timely appeal pursuant to 28 U.S.C. § 1291. Our applicable standard of review for evidentiary rulings is abuse of discretion.

3

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152-53 (1999); *United States v. Velasquez*, 64 F.3d 844, 847-48 (3d Cir. 1995).

A witness may testify as an expert if (1) the proffered witness is actually an expert; (2) the expert testifies to scientific, technical, or specialized knowledge; and (3) the expert's testimony assists the trier of fact. Fed. R. Evid. 702; *Velasquez,* 64 F.3d at 849. Additionally, testimony "in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). In *Velasquez*, we determined that handwriting analysis qualifies as scientific, technical, or specialized knowledge. *Velasquez*, 64 F.3d at 850-51. A handwriting expert may testify to the ultimate issue in a case. Fed. R. Evid. 704(a).

*Daubert* states that many factors must be considered when admitting expert testimony:

> [A] judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules. ... Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury... ."... "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because

of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."

*Daubert*, 509 U.S. at 595 (citations omitted).

The probative value of expert testimony substantially outweighing the danger of unfair prejudice, confusion of issues, or misleading the jury has been discussed in the context of the substance of testimony. *See generally*, *In re Paoli R.R. Yard PCB Litigation*, 113 F.3d 444 (3d Cir. 1997); *Soldo v. Sandoz Pharmaceuticals Corp.*, 244 F. Supp. 2d 434 (W.D. Pa. 2003); *United States v. Nguyen*, 793 F. Supp. 497 (D.N.J. 1992). The probative value of expert testimony substantially outweighing the danger of unfair prejudice has not been addressed in the context of the qualifications and credentials of the expert, and Rule 403 has not been applied to limit an expert's testimony based solely upon the expert's highly impressive credentials.

Rutland suggests that juries accept expert opinions based upon the strength of the experts' experience rather than on the quality of analysis. He contends that the probative value of the exceptionally well-qualified expert's testimony is outweighed by unfair prejudice caused solely by his stellar qualifications. We reject Rutland's novel argument.

The term unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not

4

necessarily, an emotional one." *United States v. Cross*, 308 F.3d 308, 324 n.23 (3d Cir. 2002), *quoting* Advisory Committee Note to Rule 403. An expert's experience and credentials are properly taken into account by jurors when determining how much weight to give the expert's testimony. *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 782 (3d Cir. 1996). The past experience of expert witnesses properly influences the weight the testimony should receive. *Velasquez*, 64 F.3d at 848.

Rutland's suggestion of limiting an expert from testifying to the ultimate issue if the expert has stellar qualifications leads to an absurd result. Parties would be forced to determine if their proposed experts were overly qualified, and find less qualified experts. Expert opinions, valuable to the trier of fact because they are the opinions of highly skilled and qualified experts, would be provided by less qualified experts.

This Court will not limit an expert's testimony based merely upon the expert's qualifications.

### III. Conclusion

Unfair prejudice suggests a decision on an improper basis. It is not improper for jurors to consider an expert's experience and credentials when determining the weight of the expert's testimony.

Accordingly, the judgment of the district court will be AFFIRMED.

5