

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-2004

# USA v. Cunningham

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4585

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Cunningham" (2004). *2004 Decisions.* Paper 298.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/298

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4585

UNITED STATES OF AMERICA

v.

TOBIAS A. CUNNINGHAM,

Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 02-cr-00237)
District Judge: Honorable Sylvia H. Rambo

Submitted Under Third Circuit LAR 34.1(a)
September 15, 2004

Before: ALITO, AMBRO and FISHER, Circuit Judges

(Filed September 30, 2004)

OPINION

AMBRO, Circuit Judge

Tobias A. Cunningham was convicted by a jury of, among other crimes, bank

robbery in violation of 18 U.S.C. § 2113. He now seeks a new trial, arguing that the

District Court made erroneous evidentiary rulings and that the prosecution engaged in misconduct. For the reasons set out below, we affirm Cunningham's conviction and deny his request for a new trial.

## I.  Factual Background and Procedural History[1]

On the morning of July 11, 2002, two men armed with handguns robbed the Allfirst Bank in York, Pennsylvania. The two men had entered the bank prior to the opening of business and surprised the manager and tellers after they arrived. The robbers directed the bank employees to open both the main bank vault and the bank ATM. After filling their duffel bags with $388,075 in cash, the robbers tied the hands of the bank employees and attempted, unsuccessfully, to lock them in the bank vault. The robbers then exited the bank.

A significant amount of evidence linked Cunningham to the robbery. First, an eyewitness placed Cunningham at the scene of the crime. Edith Smith was waiting for the bank to open when the robbers exited through the front door. One of the robbers told her that the bank would be open in five minutes. She later picked Cunningham's photograph out of a lineup and testified to this fact at trial.

In addition, the prosecution presented the testimony of Cunningham's two alleged co-conspirators at trial. One was a sixteen-year-old named Kevin Randolph. He testified

---

[1] This section recites only those facts relevant to Cunningham's conviction. The specific aspects of the trial to which Cunningham objects are discussed in detail in the "Analysis" section below.

2

in detail how he, Cunningham and Bilan Nelson, a bank teller at Allfirst, planned the robbery. Randolph also provided detailed testimony as to how the robbery was committed. One such detail was that he had stolen purple latex gloves in preparation for the robbery. The police recovered a pair of purple latex gloves near the bank following the robbery. A police forensics expert testified that these gloves contained Cunningham's DNA.

As for Nelson, she initially denied any involvement in the robbery in her first two statements to the police. After being arrested, however, she changed her story and implicated Cunningham. Her testimony at trial, while downplaying her role in the robbery, largely corroborated Randolph's testimony.

The prosecution also introduced evidence that Cunningham made approximately $55,000 in cash purchases, including buying a $50,000 Lincoln Navigator, shortly after the robbery. At the time of his arrest, Cunningham was unemployed.

Cunningham, however, was not an initial robbery suspect. Troy Cromer, a detective with the York City Police Department, had earlier taken the statement of Adrian Fallings. Fallings testified that, shortly after being released from prison, he was approached by an individual named Orustu Brown who was planning to rob a bank. Fallings told Cromer that he had attended a meeting with Brown, an individual named DeCarlo Pinckney and a bank employee, during which they discussed logistics for the robbery. In fact, prior to arresting Cunningham, both Brown and Pinckney were charged

with the Allstate Bank robbery based on Fallings's statement.[2]

Cunningham's main theory of defense at trial was that Brown and Pinckney had robbed the bank. To this effect, Cunningham called Fallings and Brown to testify, but both individuals exercised their Fifth Amendment right against self-incrimination. Cromer, however, testified to Fallings's previous statements as a declaration against interest. Cunningham also presented the testimony of two individuals who stated that Brown had admitted to committing the bank robbery and that Brown had put a "hit out" on Fallings and another individual.

Apparently the jury found the evidence against Cunningham credible. Following a three-day trial in February 2003, it convicted him of four counts: (1) criminal conspiracy in violation of 18 U.S.C. § 371; (2) armed bank robbery in violation of 18 U.S.C. § 2113(d); (3) bank robbery in violation of 18 U.S.C. § 2113(a); and (4) carrying and using a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). The District Court ultimately sentenced Cunningham to an aggregate prison term of 270 months (followed by five years of supervised release) and ordered a special assessment in the amount of $400 and restitution in the amount of $388,120.

Cunningham timely appealed. We have appellate jurisdiction under 28 U.S.C. § 1291.

---

[2] Fallings's statement also led to the arrest of Bilan Nelson. As noted previously, it was after Nelson's arrest that she implicated Cunningham in the robbery.

## II. Analysis

Cunningham alleges four distinct errors occurred during his trial. Two alleged errors involve evidentiary rulings. Two involve prosecutorial misconduct. When based on a permissible interpretation of the Federal Rules of Evidence, we review a decision to admit or exclude evidence for abuse of discretion. See, e.g., United States v. Saada, 212 F.3d 210, 220 (3d Cir. 2000). We also review the District Court's ruling on prosecutor misconduct for abuse of discretion. United States v. Brennan, 326 F.3d 176, 182 (3d Cir. 2003). Non-contemporaneous objections are reviewed for plain error. See id.; United States v. Brown, 254 F.3d 454, 458 (3d Cir. 2001).

### A. Evidence of Prior Convictions

As noted, Cunningham's main defense at trial was that other individuals committed the robbery in question. In this vein, Cunningham sought to introduce into evidence several prior convictions of Orustu Brown, including assault with a deadly weapon. The District Court, however, sustained the Government's objection to this proffer. Cunningham argues that this ruling improperly precluded him from presenting a complete defense.

We disagree. Rule 404(b) of the Federal Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Cunningham contends that Brown's prior convictions would have been used to prove his identity as the perpetrator

5

of the robbery, not as evidence of a propensity to commit the crime. Yet Cunningham's own brief belies this position, alleging the "fact that Brown committed a previous assault with a deadly weapon is indicative of a man who would have no difficulty pointing a gun at bank tellers." Appellant's Br. at 20. This is exactly the type of inference Rule 404(b) was meant to protect against. See United States v. Mastrangelo, 172 F.3d 288, 295 (3d Cir. 1999) (stating that, to introduce prior crime evidence, the proponent "must 'clearly articulate how that evidence fits into a chain of logical inferences' without [alleging the] mere propensity to commit crime now based on the commission of" a crime in the past (citation omitted)). Further, Rule 404(b) makes no distinction between a prosecutor attempting to use such evidence in support of his or her case in chief and a defendant attempting to use such evidence to prove that another committed a crime.

## B. State of Mind Testimony

The prosecution's first trial witness was Michele Mosley, a bank manager present at the time of the robbery. During direct examination, the prosecutor asked Mosley, "Could you describe for the jury your state of mind during that time?" Defense counsel objected on relevancy grounds. The District Court ultimately overruled this objection and Mosley testified as follows:

> From the moment that I saw them, I thought I was going to die. I remember looking up at the clock when we were ordered to go into the vault because I thought that would be the last time I would be alive. And it was 8:40.
>
> And while I was sitting on the floor, I thought of my husband and my daughter. I have one child. She is twelve years old. And she was in

6

Florida at that time. My thought was who was going to tell her about me.

And my husband, I thought about him because . . . .

At this point, defense counsel again objected, the District Court concluded that Mosley had "answered the question" and the prosecution moved onto another subject. Cunningham argues on appeal that this testimony was irrelevant, served no purpose other than appealing to the emotions of the jury and should have been excluded.

We first conclude that the District Court did not abuse its discretion in allowing Mosley to answer the question posed to her. The federal bank robbery statute requires the robbery be perpetrated "by force and violence, or by intimidation." 18 U.S.C. § 2113(a). "As used in § 2113(a), the term 'intimidation' means 'to make fearful or put into fear.'" United States v. Askari, 140 F.3d 536, 541 (3d Cir. 1998) (*en banc*) (quoting United States v. McCarty, 36 F.3d 1349, 1357 (5th Cir. 1994)), *vacated on other ground by* 159 F.3d 774 (3d Cir. 1998); cf. United States v. Maddalena, 893 F.2d 815, 819 (6th Cir. 1989) ("The requirement that property be taken either 'by force and violence' or 'by intimidation' requires proof of force or threat of force as an element of the offense."). Admittedly, the intimidation inquiry is objective, not subjective, focusing on "whether 'an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts.'" Askari, 140 F.3d at 541 (quoting United States v. Woodrup, 86 F.3d 359, 363 (4th Cir. 1996)). That said, asking Mosley about her state of mind (*i.e.*, whether she was afraid) was at least minimally probative of whether a reasonable person

7

in her position also would be afraid.

As for Mosley's actual testimony, Rule 403 of the Federal Rules of Evidence provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Unfair prejudice "means an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." United States v. Rutland, 372 F.3d 543, 543 (3d Cir. 2004) (quoting Rule 403 advisory committee note).

It may be that Mosley's answer was somewhat unresponsive and excessive. Once Cunningham's attorney objected to this testimony, however, the District Court instructed the prosecution to move on with its case. Further, both Mosley and another witness testified, without objection, that several of the tellers began crying during the ordeal and praying for their lives. Defense counsel also did not specifically raise a Rule 403 objection to the prosecution's question or request that the offending testimony be stricken from the record. See United States v. Boone, 279 F.3d 163, 188 (3d Cir. 2002) (stating that failure to raise a Rule 403 objection at trial triggers plain error review); United States v. Sandini, 803 F.2d 123, 126 (3d Cir. 1986) (same). But, even if we assume error, it was not prejudicial to Cunningham's substantial rights. In this context, we conclude that Mosley's testimony does not entitle Cunningham to a new trial.

### C. Witness Vouching

Cunningham argues that the prosecution improperly vouched for the credibility of

Bilan Nelson on two separate occasions. As noted previously, Nelson failed to mention Cunningham as a participant in the bank robbery in statements preceding her arrest, but she later did so. At trial, Nelson testified on direct examination that her previous statements had been false. Subsequent to this testimony, the prosecution asked Nelson, "When did you finally tell the truth to the investigators?" The second incident occurred during closing arguments, when the prosecution stated:

> Now Bilan I think, as I told you earlier in my opening statement, she wasn't truthful at first, she lied, and she told you she lied . . . . She lied because she didn't want to get in trouble, and she didn't want to get the guy that she was in a relationship with to get in trouble either. But eventually she did come around and admit what she had done, and she gave a statement, and she told you again here today what she did.

While Cunningham's counsel objected to the prosecution's question of Nelson, no objection was made to the statements made during closing argument.

To constitute improper witness vouching, two things must happen. First, "the prosecutor must assure the jury that the testimony of a Government witness is credible." Brennan, 326 F.3d at 183 (quoting United States v. Walker, 155 F.3d 180, 187 (3d Cir. 1998)). Second, "this assurance [must be] based on either the prosecutor's personal knowledge, or other information not contained in the record." Id. (quoting Walker, 155 F.3d at 187). A prosecutor, however, does not engage in vouching "when he argues that 'a witness is being truthful based on the testimony given at trial, and does not assure the jury [of] the credibility of the witness based on his own personal knowledge[.]'" Id. (quoting Walker, 155 F.3d at 187) (alteration in original). Finally, "a criminal conviction

9

is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context." United States v. Young, 470 U.S. 1, 11 (1985).

Here we conclude that the prosecution did not improperly vouch for the credibility of Nelson. With regard to the objected-to question, the overall tenor of this portion of Nelson's testimony is that her initial statements to the police were untruthful, but that her subsequent statements were truthful. Further, the question was asked after Nelson admitted that her previous statements were not true. Therefore, it was proper for the prosecution to inquire when, and in which statement, she literally decided, in her opinion, to tell the truth. In addition, while the prosecution's statements during closing argument did vouch for Bilan's testimony in a sense, there was no impropriety. The objected-to statements merely framed Bilan's earlier untruthful statements to the police. The prosecutor referenced neither personal knowledge nor evidence outside the record, and Cunningham does not so allege.

### D. Statements Regarding "Other Unanswered Questions"

Finally, Cunningham objects to the following statements made by the prosecution during closing argument:

> There are unanswered questions in this case, there is no question about that. There are some things that maybe we'll never be able to explain, but we have to remember that what we're here for is to decide the guilt or innocence of Tobias Cunningham, and that's what's really involved.
>
> I'm not asking you to ignore evidence about other people. What I'm saying

to you is that that evidence, however, to the extent that it, whether it affects Mr. Cunningham's guilt or innocence, should be included. If it doesn't, it shouldn't. In other words, you're not here to decide whether Adrian Fallings is credible. You're not here to decide if Orustu Brown is guilty. You're not to decide if DeCarlo Pinckney is guilty. You're here to decide if Tobias Cunningham is guilty, and those unanswered questions will have to wait for another day . . . .

Cunningham's counsel objected at this point, arguing that the prosecution's statements referenced the possibility of further investigations and were an improper attempt to influence the decision of the jury. He raises the same argument on appeal.

In <u>United States v. Zehrbach</u>, 47 F.3d 1252 (3d Cir. 1995) (*en banc*), we addressed the issue of allusions to further investigations. During closing arguments, the prosecutor in <u>Zehrbach</u> made the following statement regarding the testimony of two defense witnesses: "I suggest you shouldn't believe Drizos and Smith because they're guilty of exactly the same bankruptcy fraud that these two defendants are guilty of. *And don't you assume that they are not going to get what's coming to them either*." <u>Id.</u> at 1264 (emphasis added). We concluded the second statement was

> improper and irrelevant, because it referred to information outside of the record and sought to influence the decision of the jury on an illegitimate basis. This Court has long acknowledged a defendant's "right to have his guilt or innocence determined by the evidence presented against him, not by what has happened" — or by what may happen — "with regard to a criminal prosecution against someone else."

<u>Id.</u> at 1266 (quoting <u>United States v. Thomas</u>, 998 F.2d 1202, 1207 (3d Cir. 1993)).[3] We

---

[3] We also concluded the first statement was improper, <u>id.</u> at 1265, but no similar statement was made in our case. Accordingly, we focus on the analysis of the second

further concluded that this "remark effectively encouraged the jury to reach a guilty verdict on irrelevant and illegitimate grounds." Id. Nonetheless, we held that the prosecutor's statement was harmless error. Id. at 1267.

Similarly, we believe the prosecution in this case went too far and improperly discussed issues irrelevant to Cunningham's case. Use of the phrase "other questions will have to wait for another day," especially after immediately referencing the potential guilt of Brown and Pinckney, implies that prosecutions were being planned, or at least contemplated, against these two individuals. This is especially true when Cunningham's main defense was that Brown and Pinckney, and not he, committed the Allfirst Bank robbery.[4]

We ultimately conclude, however, that the prosecution's statements were harmless when pieced into place in the entire trial. Given "the reality of the human fallibility of the participants, there can be no such thing as . . . [a] perfect trial." United States v. Hasting, 461 U.S. 499, 508-09 (1983) (citations ommitted). As such, we should not "reverse a conviction . . . when the error [alleged] is harmless since[,] by definition, the conviction would have been obtained notwithstanding the asserted error." Id. at 506. A

statement in Zehrbach.

[4] We also believe the prosecution misspoke when it alleged that the jury's duty did not extend to determining the credibility of Adrian Fallings. To the extent that Fallings's statements implicated Pinckney and Brown, and to the extent this information dovetailed with Cunningham's theory of defense, his statements were relevant. The prosecution, however, also stated that the jury should consider evidence regarding other individuals to the extent it reflected on *Cunningham's* guilt or innocence. Thus, any error was nullified.

12

"non-constitutional error is harmless when 'it is *highly probable* that the error did not contribute to the judgment.'" Zehrbach, 47 F.3d at 1265 (quoting Government of Virgin Islands v. Toto, 529 F.2d 278, 284 (3d Cir. 1976)) (emphasis in text). After Cunningham's counsel objected to the prosecution's statements, the District Court conducted a sidebar discussion. Upon its conclusion, the prosecution made no other improper remarks and Cunningham requested no curative instruction. More importantly, the evidence of Cunningham's guilt was very strong. Two coconspirators testified against Cunningham, an eyewitness identified him, DNA evidence linked him to the crime and Cunningham was unable to account for more than $55,000 in cash purchases made shortly after the robbery. Accordingly, we are convinced that he was convicted on the basis of the evidence against him, not any irrelevant or improper statement made by the prosecution.

* * * * *

For the foregoing reasons, we affirm Cunningham's conviction and judgment of sentence.

13