

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-22-2008

# USA v. Delgado

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3741

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Delgado" (2008). *2008 Decisions.* Paper 632.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/632

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3741
_____

UNITED STATES OF AMERICA

v.

CHRISTIAN DELGADO
a/k/a Murder
a/k/a Old C Murder

Christian Delgado,

Appellant

_____

No. 06-3780
_____

UNITED STATES OF AMERICA

v.

JOSHUA BAEZ
a/k/a JOSH

Joshua Baez,

Appellant

_____

No. 06-3846
_____

UNITED STATES OF AMERICA

v.

DAVID NDUKA BOSAH
a/k/a DJ

David Nduka Bosah,

Appellant

_____

No. 06-4264

_____

UNITED STATES OF AMERICA

v.

ARGENIS PACHECO MOSCOSO,
a/k/a HENNESSEY

Argenis Pacheco Moscoso,

Appellant

_____

No. 06-4304

_____

UNITED STATES OF AMERICA

v.

ANGEL FERRER
a/k/a STRANGE

Angel Ferrer,

Appellant

_____

2

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 05-cr-00143-4, 05-cr-00143-6,
05-cr-00143-5, 05-cr-00143-1 and 05-cr-00143-2)
District Judge:  Honorable James Knoll Gardner
_____

Submitted Under Third Circuit LAR 34.1(a)
July 2, 2008

Before:  RENDELL, SMITH and FISHER, *Circuit Judges*.

(Filed: August 22, 2008)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Christian Delgado, Joshua Baez, David Bosah, Argenis Moscoso and Angel Ferrer were convicted of conspiracy to distribute cocaine base ("crack") in violation of 21 U.S.C. § 846.  Moscoso and Ferrer were also convicted of three counts of distribution of crack, *id.* § 841(a)(1), three counts of distribution of crack within 1,000 feet of a school, *id.* § 860(a), one count of possession of crack with intent to distribute, *id.* § 841(a)(1), and one count of possession of crack within 1,000 feet of a school with intent to distribute, *id.* § 860(a).  All five defendants appeal their convictions, and Moscoso also appeals his sentence.  For the reasons set forth below we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Between March 2003 and August 2004, the defendants controlled and operated the Chestnut Street Gang. The Chestnut Street Gang shuttled cocaine from New York City to Reading, Pennsylvania where gang members processed the cocaine into crack and sold it. In July 2004 Baez was arrested at one of the properties operated by the Chestnut Street Gang. He pleaded guilty in state court to possession with the intent to deliver cocaine and criminal trespass. Local and federal law enforcement agents began investigating the Chestnut Street Gang and arrested its members in August 2004. The indictment charged the defendants[1] with conspiracy to distribute crack in Reading, Pennsylvania from March 2003 through August 2004, as well as other substantive drug offenses.

The trial began on November 28, 2005. During voir dire, prospective jurors were asked if they knew any potential witnesses from a list of thirty names, including that of FBI Agent Greg Banis. Juror 3 did not respond. During the trial, the Court was informed that Agent Banis recognized Juror 3 as a neighbor. As a result, the government agreed not to call Agent Banis as a witness, and the defendants waived their right to request Juror

---

[1]David Lopez was also charged in the indictment, but was later acquitted and does not participate in this appeal.

4

3's removal. During a later examination, a government witness mentioned that the investigation had been turned over to an FBI unit supervised by Agent Banis. The defendants objected to this reference and requested a mistrial. The District Court conducted further inquiry and was assured by Juror 3 that although Banis was his neighbor, he did not "really associate" with Banis and could remain impartial. The District Court did not remove Juror 3 and denied the request for a mistrial.

Concurrently, the Court began receiving reports of juror misconduct by Juror 9. Some of this conduct included making sexual advances on female jurors and other federal employees, approaching counsel for conversation, arriving late, sleeping during trial and making racially-charged remarks. After confronting Juror 9 with these allegations, the Court, over defense counsel's objection, excused Juror 9 from further participation in the trial.

During trial, as evidence of Baez's participation in the conspiracy, the government sought to introduce Baez's certified conviction records, guilty plea, and sentencing order regarding his July 2004 state drug conviction. Other witnesses were able to corroborate this evidence. The defendants objected to the introduction of this evidence, asserting that it was more prejudicial than probative, and that despite being introduced only against Baez, it inferred that the other defendants were also involved with the conspiracy, and thus violated their Sixth Amendment right to confrontation. Despite these objections the Court admitted the conviction records into evidence. The Court gave a limiting

instruction to the jury, specifically stating that Baez's conviction record was "not evidence that any of those other five defendants [were] guilty of conspiracy, and [was] not evidence of anything against those other five co-defendants." The Court also explained to the jury that Baez "did not plead guilty to conspiracy. He pled guilty to acts which may or may not have been part of that alleged conspiracy and that's for you to determine." The Court also directed the jury "not to consider Joshua Baez's plea against any of the other co-defendants for any reason or any charge."

Also during trial, the government examined officers assigned to the F.B.I. Federal Task Force in charge of the conspiracy investigation. These officers testified that the defendants dealt drugs near schools and around law-abiding citizens. Video surveillance of the neighborhood where some of the drug activity occurred was also introduced at this time. Moscoso objected to the introduction of this evidence.

Delgado, Baez, Bosah, Moscoso, and Ferrer were eventually convicted and sentenced. Moscoso, the only defendant who now appeals his sentence, was found guilty of conspiring to distribute crack, possession with intent to distribute, distribution (three counts), and distribution of crack within 1,000 feet of a school (three counts), charges carrying a statutory maximum penalty of life in prison. The Court calculated a base offense level of 46 and a criminal history category of IV, yielding an advisory Guidelines sentence of life imprisonment. The Court considered the sentencing factors contained in

18 U.S.C. § 3553(a) and sentenced Moscoso to a below-Guidelines sentence of 480 months' imprisonment.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 3742. "We review a district court's denial of motions for a mistrial and a new trial, as well as its investigation of jury misconduct, for an abuse of discretion." *United States v. Bertoli*, 40 F.3d 1384, 1392 (3d Cir. 1994). We review the District Court's evidentiary rulings for an abuse of discretion. *United States v. Rutland*, 372 F.3d 543, 545 (3d Cir. 2004). However, we exercise plenary review when we "are considering whether the District Court correctly interpreted the Federal Rules of Evidence and relevant case law, and [when the defendants'] challenge implicates the confrontation clause." *United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir. 1998). We review the constitutionality of the District Court's sentencing procedure de novo. *United States v. Barbosa*, 271 F.3d 438, 452 (3d Cir. 2001).

## III.

All five defendants contend that the District Court abused its discretion when it failed to remove Juror 3 or grant their motions for a mistrial. Juror 3 failed to disclose his acquaintance with Agent Banis during voir dire and was an empaneled juror when he heard another witness mention that Banis was the F.B.I. agent supervising the conspiracy

7

investigation. We conclude that the District Court did not abuse its discretion when it found that the non-disclosure was unintentional and did not affect the fairness of the trial.

In general, in order to obtain a new trial

> a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). Here, after conducting an on-the-record inquiry, the District Court found that Juror 3's failure to reveal his acquaintance with Banis during voir dire was unintentional, and was either caused by Juror 3's inattention or the Court's mispronunciation of Banis's name. "Generally, we will not invalidate a jury verdict because of a juror's 'mistaken, though honest' response at voir dire." *United States v. Hodge*, 321 F.3d 429, 441 (3d Cir. 2003) (quoting *McDonough*, 464 U.S. at 555). Defendants have not cited specific evidence showing that the District Court incorrectly found Juror 3's actions to have been unintentional. Regardless, a timely disclosure of Juror 3's acquaintance with Agent Banis would not have necessarily resulted in a dismissal for cause. As the District Court found, the relationship between Juror 3 and Banis was quite weak, noting that Juror 3 did not "really associate" with Banis. In addition, Banis was not a central figure in the trial, having no active role, thus mitigating the possibility of partiality. Significantly, and in contrast to other venirepersons who had been dismissed, Juror 3 also made repeated

8

assurances, accepted by the District Court, that he could and would remain impartial. *See, e.g., United States v. Thorton*, 1 F.3d 149, 154 (3d Cir.1993) (a district court possesses "wide latitude in making the kind of credibility determinations underlying the removal of a juror"). Thus, we conclude that the District Court did not abuse its discretion in not declaring a mistrial with respect to the actions of Juror 3.

Moscoso and Ferrer argue that the District Court abused its discretion when it dismissed Juror 9 for inappropriate conduct over their objections. The record shows that Juror 9 engaged in an array of inappropriate behavior, including: approaching trial counsel for conversation, making inappropriate advances to members of the jury and others, making racially-charged remarks, sleeping during proceedings, and arriving late to court. The District Court found that this behavior was "poison to the deliberation process to the point where jurors cannot have a free and frank interchange." As we have previously stated, the District Court is "in a far superior position than this Court to appropriately consider allegations of juror misconduct." *United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006). Therefore, as the actions of Juror 9 were egregious, we conclude that the District Court did not abuse its discretion when it dismissed Juror 9 in order to preserve the integrity of deliberations.

Baez argues that the District Court abused its discretion when it permitted his state conviction records to be admitted as evidence against him. The state conviction records contain statements made by Baez admitting to possessing and distributing drugs at the

9

same time and location as the federal conspiracy. This evidence was therefore properly admitted under Rule 801(d)(2) as an admission, as it is probative of his conduct at the time and place of the federal conspiracy. Baez has not shown compelling grounds to find that the probative value of this evidence is greatly outweighed by the prejudicial effect of admitting this evidence, which was corroborated by other testimony. *See* Fed. R. Evid. 403. Any prejudice or confusion that the admission of Baez's record may have caused was mitigated by an explicit jury instruction, explaining that Baez "did not plead guilty to conspiracy . . . . He pled guilty to acts which may or may not have been part of that alleged conspiracy."

Delgado, Bosah, Moscoso, and Ferrer additionally argue that the admission of Baez's state conviction "necessarily implicated them" and because they did not have an opportunity to cross-examine Baez, their right under the Confrontation Clause was violated. The defendants rely on the rule enunciated in *Bruton v. United States*, which held that a defendant's right to confrontation was violated where his non-testifying co-defendant's confession, which implicated both the defendant and the co-defendant in the crime, was admitted into evidence. 391 U.S. 123 (1968). *Bruton* is not applicable when the admission of a non-testifying co-defendant does not name or "facially incriminate" any other defendant. *Richardson v. Marsh*, 481 U.S. 200, 207 (1987). Since Baez's admission did not expressly name or reference any other defendant, there is no Confrontation Clause violation. The defendants, other than Baez, argue that even if the

10

admission did not directly implicate them, it created a strong inference that they were involved with Baez in the conspiracy to distribute drugs. However, as we stated in *United States v. Belle*, "evidentiary linkage or contextual implication may not be utilized to convert a non-*Bruton* admissible statement into a *Bruton* inadmissible statement." 593 F.2d 487, 494 (3d Cir. 1979). Moreover, the jury was given a limiting instruction, requested by the defendants, reminding them to consider Baez's conviction against him only, and it is an "almost invariable assumption of the law that jurors follow their instructions." *Richardson*, 481 U.S. at 206. We therefore conclude that Baez's admission was properly admitted as evidence against him, and that admission of the evidence did not offend the Sixth Amendment rights of the other defendants.

Appellant Moscoso argues that the District Court abused its discretion when it failed to grant his motion for a mistrial after a government witness mentioned that the investigation was turned over to the FBI and that the drug activity had occurred near to a school and law-abiding citizens. Moscoso does not dispute the factual basis for these comments, but rather argues that he was unfairly prejudiced under Federal Rule of Evidence 403. However, "Rule 403 does not provide a shield for defendants who engage in outrageous acts . . . . It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone." *United States v. Cross*, 308 F.3d 308, 325 (3d Cir. 2002) (internal quotation marks and citation omitted). The references to schools were essential to the government's standard of proof. The

11

references to innocent bystanders and the FBI were, as the government states "innocuous and inevitable." Regardless, Moscoso has not shown that the District Court abused its discretion when it determined that this material was not substantially more prejudicial than probative.

Finally, Moscoso appeals his sentence, arguing that he should be resentenced and that he "is entitled to have the beneficial aspects of the [*United States v. Booker*, 543 U.S. 220 (2005)] decision apply without retroactive application of the detrimental aspects." Moscoso contends that the "detrimental aspect[]" of *Booker* is that it allows courts to sentence defendants above the Guidelines range. "The *Ex Post Facto* Clause of the Constitution prohibits application of a law enacted after the date of the offense that inflicts a greater punishment than the law annexed to the crime when committed." *United States v. Pennavaria*, 445 F.3d 720, 723 (3d Cir. 2006) (internal quotation marks and citation omitted). No ex post facto violation occurred, first because Moscoso had fair warning that participation in federal conspiracy to distribute crack was punishable by life imprisonment under the statute. *See id.* at 723-24. In addition, *Booker* "clearly instructed that both of its holdings should be applied to all cases on direct review." *Pennavaria*, 445 F.3d at 724. Here, Moscoso's sentence of 480 months' imprisonment is below both the statutory maximum of life imprisonment and the advisory Guidelines sentence of life imprisonment. We will therefore affirm the District Court's judgment of sentence against Moscoso.

12

IV.

For the reasons set forth above, we will affirm.