**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Ricky Lee WOODRUP, a/k/a Ricky Lee Woddrup, a/k/a Lee Woodrup, a/k/a Ricky L. Woodrup, a/k/a Rodney Woodrup, Defendant–Appellant.**

No. 95–5284.

United States Court of Appeals,
Fourth Circuit.

Argued March 4, 1996.

Decided June 18, 1996.

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant. J. Gaston B. Williams, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, Ted F. Mitchell, Third Year Law Student, Raleigh, North Carolina, for Appellee.

Before LUTTIG, Circuit Judge, CHAPMAN, Senior Circuit Judge, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge LUTTIG wrote the opinion, in which Senior Judge CHAPMAN and Senior Judge CLARKE joined.

## OPINION

LUTTIG, Circuit Judge:

Appellant Ricky Woodrup, while under a term of supervised release imposed upon a conviction for breaking and entering, vaulted over the teller counter of the Southern National Bank in Spring Lake, North Carolina, removed the cash from the teller's drawer, and then fled after being confronted by a teller. Woodrup was arrested approximately seven minutes later at a nearby motel. He was subsequently tried and convicted of bank robbery in violation of 18 U.S.C. § 2113(a).

One of the conditions of the supervised release imposed upon Woodrup's conviction for breaking and entering was that he not commit a crime during the term of supervision. *See* 18 U.S.C. § 3583(d) ("The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision. . . ."). Consequently, in a proceeding after his conviction for bank robbery but before he was sentenced for that offense, Woodrup's supervised release was revoked, and he was sentenced to 24 months in prison. Woodrup thereafter received a consecutive 240 month sentence for the bank robbery conviction itself, the district court having summarily denied his motion to vacate the conviction on grounds of double jeopardy.

On this appeal, Woodrup challenges not his bank robbery conviction, but only the 240 month sentence imposed for that offense, as unconstitutional under the Double Jeopardy Clause of the Fifth Amendment.[1] He challenges, alternatively, the sufficiency of the evidence supporting his conviction for bank robbery. Finding no merit in either claim, we affirm the judgment of the district court.

## I.

Woodrup first contends that, because the term of imprisonment imposed for violation of the conditions of his supervised release constituted punishment for his bank robbery, the subsequent punishment imposed for his bank robbery conviction violates the Double Jeopardy Clause's proscription against successive punishments for the same offense.[2]

---

1. The Supreme Court has held that the Double Jeopardy Clause bars subsequent prosecutions for the same offense as well as successive punishments. *See North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Obviously, if Woodrup's challenge was one based on subsequent prosecutions, then it is the revocation hearing, not the prior bank robbery prosecution, that would be barred (if the revocation hearing can be deemed a "prosecution" at all). Presumably, it is because such a challenge would draw into question only the 24 month sentence he received at the supervised release revocation hearing, not the 240 month sentence he received for the bank robbery con-

viction, that Woodrup challenges the latter sentence rather than the prosecution that yielded the former sentence.

2. Woodrup actually received the term of imprisonment for violating the conditions of his supervised release by robbing the bank *and* by using a controlled substance. J.A. 19. Woodrup claims that the fact that the revocation was also based on a positive drug test does not "moot" the double jeopardy claim because the bank robbery conviction rendered his violation of supervised release a "Grade A," rather than a "Grade C," violation. Because, as we explain below, a su-

We disagree with the premise of Woodrup's contention, and therefore with his ultimate conclusion that the punishment on his bank robbery conviction is unconstitutional.

The sentence imposed upon revocation of a term of supervised release is an authorized part of the original sentence, just as the term of supervised release is an authorized part of the original sentence for commission of the felony or misdemeanor, *see* 18 U.S.C. § 3583(a). As the Sentencing Commission has explained, a violation of supervised release is a "breach of trust" in connection with the original sentence and the resulting sentence a punishment incident to the original offense:

> While the nature of the conduct leading to the revocation would be considered in measuring the extent of the breach of trust, imposition of an appropriate punishment for any new criminal conduct would not be the primary goal of a revocation sentence. *Instead, the sentence imposed upon revocation would be intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision, leaving the punishment for any new criminal conduct to the court responsible for imposing the sentence for that offense.*

U.S.S.G. Ch. 7, Pt. A, ¶ 3(b) (emphasis added); *see also id.* at Pt. B, Intro. Commentary; 18 U.S.C. § 3583(e)(3) (providing that the term of imprisonment imposed upon revocation of supervision is a function of the particular offense for which the supervision was imposed). It is for this reason that the Commission requires the sentence imposed upon revocation of supervised release to run consecutively to any sentence for the conduct that was "the basis of the revocation of probation or supervised release." U.S.S.G. § 7B1.3(f). Indeed, because punishment for violating the terms of supervised release is

punishment for the original offense, we have held that the *Ex Post Facto* Clause prohibits legislative changes in the terms and conditions of supervised release—including the length of imprisonment imposed for a violation of supervised release—following the commission of the original offense. *United States v. Parriett,* 974 F.2d 523, 526 (4th Cir.1992) (rejecting argument that "revocation of [the defendant's] supervised release was not ordered as punishment for his initial crimes, but instead, as punishment for his possession of drugs during the term of his supervised release"); *see also United States v. Meeks,* 25 F.3d 1117 (2nd Cir.1994).

That the sentence imposed upon revocation of supervision is punishment for the original offense is further confirmed by the fact that the full panoply of constitutional protections afforded a criminal defendant is not required for the revocation of supervised release. *See, e.g.,* 18 U.S.C. § 3583(e)(3) (providing that a violation of supervised release need only be proven by a preponderance of the evidence); *compare United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993) (noting that nonsummary criminal contempt is "a crime in the ordinary sense" for which ordinary "constitutional protections" apply (citations omitted)). As was true of the enhancement at issue in *Witte v. United States,* —— U.S. ——, ——, 115 S.Ct. 2199, 2206, 132 L.Ed.2d 351 (1995), the consideration of the "offender-specific information" of Woodrup's bank robbery at the proceeding to revoke the term of supervision imposed for his breaking and entering offense "without the procedural protections attendant at a criminal trial ... necessarily impl[ies] that such consideration [did] not result in 'punishment' for such conduct."[3]

In the analogous contexts of probation and parole,[4] the courts of appeals, reasoning from

---

pervised release revocation based solely on the bank robbery conviction does not bar a subsequent prosecution or punishment for the bank robbery offense, we need not address whether the positive drug test would save a conviction that would otherwise be constitutionally infirm.

**3.** *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), is not to the contrary. The

only issue in *Kurth Ranch* was whether the Montana tax constituted a punishment for double jeopardy purposes. Here, it is agreed that Woodrup is being punished; the only question is for what offense.

**4.** *Cf. United States v.Pierce,* 75 F.3d 173, 177 (4th Cir.1996) (holding that supervised release is "like" parole for purposes of the Assimilative Crimes Act); *United States v. Marmolejo,* 915

the like fact that a sentence imposed upon the revocation of probation or parole is not punishment for the conduct prompting the revocation, but, rather, a modification of the original sentence for which the probation or parole was authorized, *Ralston v. Robinson,* 454 U.S. 201, 220 n. 14, 102 S.Ct. 233, 245 n. 14, 70 L.Ed.2d 345 (1981); *see also United States v. DiFrancesco,* 449 U.S. 117, 137, 101 S.Ct. 426, 437, 66 L.Ed.2d 328 (1980); *id.* at 148, 101 S.Ct. at 443 (Brennan, J., dissenting), have consistently held that the subsequent criminal prosecution and punishment for conduct which previously served as the basis for a revocation of probation or parole does not offend the Double Jeopardy Clause of the Fifth Amendment. *See, e.g., United States v. Hanahan,* 798 F.2d 187, 189 (7th Cir.1986); *Bible v. Arizona,* 449 F.2d 111, 112–13 (9th Cir.1971), *cert. denied,* 405 U.S. 994, 92 S.Ct. 1268, 31 L.Ed.2d 463 (1972); *see generally Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) ("[R]evocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."); *cf. United States v. Grisanti,* 4 F.3d 173, 176 (2d Cir.1993) (bail revocation followed by criminal prosecution). We believe that the same must be true in the context of revocations of supervised release. It is of no moment that, as Woodrup contends, Appellant's Br. at 13–15, the sentence imposed upon revocation of supervised release is "in addition to the period of imprisonment" already served, even if the defendant has served the maximum term authorized for the original substantive offense (exclusive of the term of supervision), rather than merely the reinstatement of an unserved sentence. The sentence is no less punishment for the origi-

nal offense for which the term of supervised release was imposed.

■ Because the punishment imposed upon Woodrup for violating the terms of his supervised release is properly considered punishment for his previous offense of breaking and entering, not for his subsequent offense of bank robbery, the punishment imposed for this latter offense is not barred by the Double Jeopardy Clause.

On the mistaken understanding that the sentence imposed upon the revocation of his supervised release constituted punishment for his bank robbery, Woodrup contends that *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), requires invalidation of the sentence he received on his bank robbery conviction. In *Dixon,* the Court held that a criminal contempt prosecution for violating conditions of bond barred a subsequent prosecution for the offense on which the criminal contempt conviction was based because the two offenses satisfied the same elements test of *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Because Dixon had not been previously convicted, however, the sentence imposed for Dixon's criminal contempt could only have been punishment for the conduct that gave rise to the contempt—the same cocaine possession for which the government had again sought to · prosecute him—and therefore Dixon's subsequent prosecution for cocaine possession necessarily met *Blockburger*'s same elements test.

In a case such as the one before us, where the punishment (the sentence imposed upon revocation of the supervised release) as to which the challenged punishment (the sen-

---

F.2d 981, 985 (5th Cir.1990) (same); *United States v. Reyes,* 48 F.3d 435, 437–39 (9th Cir. 1995) (holding that supervised release and probation are "like punishments" for the purposes of the Assimilative Crimes Act); *Parriett,* 974 F.2d at 526–27 & n. 2 (holding that parole and supervised release are identical for purposes of the *Ex Post Facto* Clause); *United States v. Paskow,* 11 F.3d 873, 881 (9th Cir.1993) ("Supervised release and parole are virtually identical systems. Under each, a defendant serves a portion of a sentence in prison and a portion under supervision outside prison walls. If a defendant violates the terms of his release, he may be

incarcerated once more under the terms of his original sentence."); *United States v. Montenegro–Rojo,* 908 F.2d 425, 432–33 (9th Cir.1990) (noting that supervised release was designed by Congress as a method of post-incarceration supervision to replace parole because Congress felt the latter was too ineffective a system of supervising offenders following a period of incarceration); *Pierce,* 75 F.3d at 177 (noting that parole and supervised release are both methods of reintegrating offenders into the community); U.S.S.G. Ch. 7, Pt. B, Intro. Commentary ("[V]iolations of the conditions of probation and supervised release[are] functionally equivalent.").

tence imposed for the subsequent substantive offense) is allegedly successive was itself punishment for a prior offense, the *Blockburger* test is applied to the prior offense and the offense as to which the defendant pleads the double jeopardy bar. In *Witte v. United States,* —— U.S. ——, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), for example, the defendant's participation in a cocaine conspiracy had been used as "relevant conduct" to enhance the defendant's sentence for marijuana possession. In rejecting the defendant's claim that his subsequent cocaine conspiracy conviction was barred by the Double Jeopardy Clause, the Court concluded that, although the government was required to prove all the elements of the cocaine conspiracy at the marijuana sentencing hearing, the defendant was "neither prosecuted for nor convicted of the cocaine offenses during the[marijuana] criminal proceeding." *Id.* at ——, 115 S.Ct. at 2204. In reaching this conclusion under *Blockburger*'s same elements test, the Court compared the cocaine offenses with the original marijuana offense, not with "relevant conduct" (*i.e.,* participation in the cocaine conspiracy) that was used to enhance the sentence for the marijuana possession.

In the same way that the Court in *Witte* compared the cocaine offenses with the original marijuana offense, the offenses to be compared under *Blockburger* to determine whether Woodrup's punishment for bank robbery is forbidden by the Double Jeopardy Clause are the breaking and entering and the bank robbery, not the violation of supervised release (*i.e.,* the bank robbery) and the bank robbery. Whether the enhancement or modification comes at the time of the initial sentencing, as it did in *Witte,* or thereafter, as here, is immaterial. In both cases, the enhancement or modification is legislatively authorized punishment for the offense of original conviction, not for the conduct giving rise to the enhancement. *Cf. Witte,* —— U.S. at ——, 115 S.Ct. at 2205 ("[P]etitioner's double jeopardy theory—that consideration of uncharged conduct in arriving at a sentence within the statutorily authorized punishment range constitutes 'punishment' for that conduct—is not supported by our precedents, which make clear that a defendant in that situation is punished, for double jeopardy purposes, only for the offense of which the defendant is convicted.").

■ Accordingly, we hold, as has the only other circuit to consider the issue, that the Double Jeopardy Clause does not prohibit the government from criminally prosecuting and punishing an offense which has formed the basis for revocation of a term of supervised release. *See United States v. Soto-Olivas,* 44 F.3d 788, 792 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2289, 132 L.Ed.2d 290 (1995); *cf. Meeks,* 25 F.3d at 1122–23 (*dicta* ).

## II.

Woodrup also claims that the evidence was insufficient to support a conviction for bank robbery, which requires that the theft be "by force and violence, or by intimidation," 18 U.S.C. § 2113(a), and that the evidence would support at most a conviction for bank larceny, *id.* at § 2113(b).

The evidence introduced at trial showed that Woodrup entered the bank, looked directly at teller Evelyn Woodham, walked very quickly across the lobby to the teller position, reached across the counter "as if ... trying to grab" the teller, and vaulted over the counter headfirst, causing her to back away, screaming. J.A. at 48. Woodrup then proceeded to the money drawer and began stuffing money from it into his army jacket. Woodrup then proceeded to the next teller position, and ultimately fled the bank. Woodrup did not present a note, show a weapon, or make an oral demand for money.

The test in this circuit for intimidation under § 2113(a) is whether " 'an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts.' " *United States v. Wagstaff,* 865 F.2d 626, 627 (4th Cir.) (quoting *United States v. Higdon,* 832 F.2d 312, 315 (5th Cir.1987), *cert. denied,* 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988)) (emphasis deleted), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3193, 105 L.Ed.2d 701 (1989). Woodrup does not dispute that the teller was reasonably intimidated; rather, he argues that *Wagstaff* also requires the government

to prove that he *intended* the intimidation. *See id.* ("For intimidation to occur under [§ 2113(a) ], a defendant's conduct must be 'reasonably calculated to produce fear.' " (quoting *United States v. Amos,* 566 F.2d 899, 901 (4th Cir.1977); *United States v. Harris,* 530 F.2d 576, 579 (4th Cir.1976))).

■ We disagree. The statute merely requires that a theft of money from a bank be "by force or violence, or by intimidation" in order to constitute robbery; nothing in the statute even remotely suggests that the defendant must have intended to intimidate. We do not read *Wagstaff, Amos,* and *Harris* to the contrary. We therefore reaffirm that the intimidation element of § 2113(a) is satisfied if "an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts," whether or not the defendant actually intended the intimidation.

■ The evidence adduced at trial in this case is more than sufficient to support a finding by the jury that the teller was intimidated because she reasonably could infer a threat of bodily harm from the fact that Woodrup reached toward her and then vaulted over the counter at her in the course of a bank robbery. Even Woodrup admitted that he was "glad that the teller didn't have a heart attack and die." J.A. at 122–23 (testimony of agent Strong).

The judgment of the district court is affirmed.

*AFFIRMED.*