**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 12-4248
_____

UNITED STATES OF AMERICA,

              Plaintiff – Appellee,

         v.

JOSEPH SAMUEL HALL,

              Defendant – Appellant.

_____

Appeal from the United States District Court for the Northern
District of West Virginia, at Wheeling.   Frederick P. Stamp,
Jr., Senior District Judge.   (5:11-cr-00034-FPS-JES-1)

_____

Argued:  February 1, 2013          Decided:  March 20, 2013

_____

Before KING, SHEDD, and THACKER, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Shedd wrote the opinion,
in which Judge King and Judge Thacker joined.

_____

**ARGUED:** Edward Lee Gillison, Jr., GILLISON LAW OFFICES, Weirton,
West Virginia, for Appellant.   David J. Perri, OFFICE OF THE
UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.
**ON BRIEF:** William J. Ihlenfeld, II, United States Attorney,
Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Joseph Samuel Hall appeals his conviction for being a felon in possession of firearms in violation of 18 U.S.C. § 922(g). Finding no merit in his appellate contentions, we affirm.

I.

Because the government prevailed at trial, we review the evidence in the light most favorable to the government. United States v. Jefferson, 674 F.3d 332, 341 n.14 (4th Cir. 2012). On February 19, 2011, Hall, a convicted felon, entered a Cabela's retail store near Wheeling, West Virginia, with an acquaintance named Airiel Underwood. There, Underwood attempted to buy two guns. Cabela's ran a background check on Underwood through the National Instant Criminal Check System ("NICS"), which did not immediately approve the transaction. Consequently, Cabela's refused to complete the sale. However, because it did not receive notification from NICS within three business days that Underwood was ineligible to purchase the guns, Cabela's eventually allowed Underwood to purchase the guns. Underwood and Hall returned to Cabela's on February 27 to make the purchase.

During the February 27 visit, Cabela's sales clerk Miranda Cordery noticed that Hall stayed very close to Underwood. Then, after Underwood purchased the guns, Hall stated that they would

2

need ammunition. Cordery then discussed different types of ammunition with Hall, and he selected ammunition for Underwood to purchase. After leaving Cabela's with Hall, Underwood placed the guns and ammunition in the trunk of Hall's car and rode with him to her apartment, where he dropped her off and drove away with the guns and ammunition. Hall gave Underwood the money to purchase the guns and additional money for her assistance.

Shortly thereafter, NICS determined that Underwood was prohibited from purchasing the guns because of a recent drug offense. Accordingly Joe Price, an agent of the Bureau of Alcohol, Tobacco, and Firearms ("A.T.F"), attempted to retrieve the guns from Underwood, but she told Price that she had given the guns to her boyfriend. Underwood gave Price a fictitious name for her boyfriend, but Price determined that Underwood had given the guns to Hall and arranged for Hall to be arrested near his home in Detroit, Michigan. Eventually, one of the guns, identified by serial number, was found approximately eight miles from Hall's home.

Hall was indicted for aiding and abetting a false statement in acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6) and for being a felon in possession of firearms in violation of 18 U.S.C. § 922(g) & 2(a). A jury acquitted him on the first count but convicted him on the second. He now appeals that conviction.

II.

A.

We turn first to Hall's contention that the district court erred by denying his motion for acquittal, in which he argued that the evidence was insufficient to establish that he possessed the guns. We review challenges to the sufficiency of the evidence de novo, United States v. Alerre, 430 F.3d 681, 693 (4th Cir.2005), and we must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to support it. Burks v. United States, 437 U.S. 1, 17 (1978). Here, we find that the evidence was sufficient to support Hall's conviction.

To sustain a conviction for being a felon in possession of firearms, constructive possession is sufficient. United States v. Gallimore, 247 F.3d 134, 136-37 (4th Cir. 2001). "A person has constructive possession over contraband when he has . . . control over the . . . vehicle in which it is concealed." United States v. Armstrong, 187 F.3d 392, 396 (4th Cir. 1999). As noted, evidence at trial established that Underwood and Hall purchased the guns together in Cabela's. They left the store together and proceeded to Hall's car, where Underwood placed the guns in the trunk. Hall then took Underwood to her apartment and drove away with the guns. This evidence is sufficient to establish that Hall had constructive possession of the guns.

4

Accordingly, we affirm the district court's denial of the motion for acquittal.

                                    B.

We turn next to Hall's challenge to the district court's decision to allow Cordery to testify about Underwood and Hall purchasing ammunition. Hall contends that Cordery's testimony was evidence of other crimes offered to prove bad character, which should have been excluded under Fed. R. Evid. 404(b). The district court disagreed for several reasons, including that the testimony was not admitted to show bad character but rather to provide context for the gun purchase. The district court concluded that, under United States v. Kennedy, 32 F.3d 876, 885-86 (4th Cir. 1994), the testimony was admissible for that purpose. We review the district court's decision to admit this testimony for abuse of discretion. United States v. Lighty, 616 F.3d 321, 351 (4th Cir. 2010).

Fed. R. Evid. 404(b) limits the circumstances under which "[e]vidence of a crime, wrong, or other act" may be admitted, but "evidence of uncharged conduct is not considered other crimes evidence [and falls outside the scope of Rule 404(b)] if it arose out of the same series of transactions as the charged offense, or if it is necessary to complete the story of the crime on trial." Kennedy, 32 F.3d at 885 (internal quotations and alterations omitted). Here, the ammunition purchase arose

out of the same series of events as the gun purchase. Further, since the government's case depended upon proving that Underwood was a straw buyer for Hall, showing that Hall asked to buy ammunition and chose the type of ammunition to buy was "necessary to complete the story of the crime on trial." Id. (internal quotations and alterations omitted). Therefore, this testimony was admissible under Kennedy, and the district court did not abuse its discretion by allowing it.

C.

Hall next challenges the district court's decision to admit into evidence the gun recovered near his home in Detroit. On that point, Hall argues that the district court should have excluded the gun under Fed. R. Evid. 403 because its probative value was substantially outweighed by the danger of unfair prejudice. We review evidentiary rulings for abuse of discretion. Lighty, 616 F.3d at 351. Here, we find no abuse of discretion and affirm the district court's ruling.

Fed. R. Evid. 403 states that relevant evidence may be excluded if its "probative value is substantially outweighed by a danger of . . . unfair prejudice." Hall argues that the unfair prejudicial value of the gun was high in relation to its probative value because the gun was not recovered in his possession. However, there was ample evidence linking the gun to Hall, including the fact that its serial number matched the

6

serial number on one gun Underwood purchased for Hall at Cabela's. With that evidence linking the gun to Hall, the fact that it was recovered in someone else's possession does little, if anything, to diminish its probative value or increase the danger of unfair prejudice. Therefore, we find no abuse of discretion in the district court's decision to admit the gun, and we affirm that ruling.

## D.

We now turn to Hall's challenge to the district court's decision to deny his motion for a mistrial. In that motion, Hall contended that the government improperly argued to the jury that Underwood had no motive to lie to inculpate him. Specifically, the government stated in its closing argument:

> Defense counsel has gone to great lengths to try to suggest to you that [Underwood] – her credibility is suspect and you can't believe what she says. Well, what has the defense suggested to you as to her motive to incriminate this guy? Why? What motive?

J.A. 609. The court denied the motion for a mistrial, after which the government continued to encourage the jury to question what motive Underwood had to inculpate Hall. We review whether allegedly improper remarks from counsel require a mistrial de novo. United States v. Collins, 415 F.3d 304, 307 (4th Cir. 2005). Finding no error, we affirm.

To obtain a new trial based on improper remarks from the government, a defendant must show that the remarks were improper

7

and that they affected the defendant's substantial rights to such a degree that they deprived him of a fair trial. United States v. Chorman, 910 F.2d 102, 113 (4th Cir. 1990). Here, Hall argues that the government's remarks were improper because there was evidence that Underwood had a motive to lie, but Hall points to no such evidence. In fact, the only evidence he points to is testimony from Underwood that she initially lied to the A.T.F. in an attempt to exonerate, not inculpate, herself and Hall. Therefore, the government's remarks questioning what motive Underwood had to inculpate Hall were not inconsistent with the evidence or improper in any way. Accordingly, we affirm the district court's decision to deny the motion for the mistrial.

## III.

The final two issues we address pertain to the government's investigation and trial preparation. We begin by recounting additional facts and procedural history pertinent to these issues.

Prior to Hall's trial, Price showed Cordery a black and white photograph of Hall and asked her whether the photograph showed the person who had accompanied Underwood into Cabela's on the two occasions described above. Cordery responded that "the picture was too bad. It was too grainy. [She] couldn't really

8

tell."[1]  J.A. 280.  Counsel for the government represented to this Court at oral argument that Price made no notes pertaining to this conversation with Cordery.

Under the district court's Initial Scheduling Order, the government was required to disclose all exculpatory evidence by October 3, 2011, and was requested to disclose all "statements or reports" from prospective witnesses by December 6, 2011. (Dist. Ct. Doc. 18, ¶ 7, requesting disclosure of "material described in 18 U.S.C. § 3500," which requires disclosure of "statements or reports" from witnesses.)  The government did not disclose the fact that Price had conducted the photo display or that Cordery could not definitively identify Hall in it.

At trial, the government asked Cordery to identify the person who had accompanied Underwood into Cabela's.  Hall's counsel, unaware that Cordery had been unable to identify Hall in the photo display, objected and claimed that the in-court identification was "cumulative."  J.A. 261.  The district court, also unaware of the display, overruled the objection, and Cordery identified Hall as Underwood's companion.  Then, on

---

[1] At sentencing, Price testified about the photo display and explained that "Ms. Cordery stated that it was a grainy photo and she was pretty sure.  She gave, like, maybe 90 percent, but she couldn't say that she was 100 percent sure" that the photograph depicted the person who accompanied Underwood into the store.  J.A. 692.

cross examination, Hall's counsel asked Cordery whether she had ever seen a photo of Hall, and she testified about the photo display and her inability to identify Hall in it. This testimony was the first notice Hall or the court received of the display. At this point, Hall's attorney made no objection or motion based on the government's failure to disclose the photo display. Further, at closing argument, Hall's counsel admitted that Hall was the person with Underwood in Cabela's during at least one of the visits. Also, at oral argument to this Court, Hall's counsel conceded that Hall's identity as Underwood's companion is not contested.[2]

On appeal, Hall raises two issues that involve the display. First, he contends that Cordery's in-court identification of Hall was tainted by the display, which Hall contends was improperly suggestive. Second, he contends that Cordery's inability to identify him in the photo display was exculpatory evidence that the government should have disclosed under Brady v. Maryland, 373 U.S. 83 (1963). The parties agree that plain error review is appropriate for the Brady issue, but they argue for different standards of review on the objection to the in-

---

[2] There was ample evidence beyond Cordery's testimony that Hall was, in fact, Underwood's companion in the store. This evidence included but was not limited to Underwood's testimony and store video showing Hall with Underwood.

court identification.  We need not resolve this dispute because, with regard to both issues, the standard of review does not affect our decision.

Fed. R. Cr. P. 52(a) directs that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."  "Under [this] harmless-error standard, we will not reverse if we can 'say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'"  United States v. Byers, 649 F.3d 197, 211 (4th Cir. 2011) (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)).  Here, even if we assume that the photo display was improperly suggestive,[3] that it affected Cordery's in-court identification, and that the government should have disclosed Cordery's inability to identify Hall, none of those points could have swayed the outcome of the trial because Hall does not contest that he was, in fact, the person with Underwood at Cabela's.  Accordingly, the alleged errors

---

[3] The Supreme Court and this Court have stated that single-photograph displays are unduly suggestive and should generally be viewed with suspicion.  See Manson v. Brathwaite, 432 U.S. 98, 116 (1977) (explaining that identifications "arising from single-photograph displays may be viewed in general with suspicion"); United States v. Johnson, 114 F.3d 435, 441-42 (4th Cir. 1997) (concluding that the use of a "single photograph display" for pretrial identification was unduly suggestive).

concern an issue that is not in dispute—Hall's presence at Cabela's—so they are harmless and do not entitle Hall to relief.

## IV.

For the foregoing reasons, we affirm Hall's conviction.

<u>AFFIRMED</u>