[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15497
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cr-00053-TCB-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ISSA DIALLO,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 29, 2017)

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Issa Diallo challenges the district court's revocation of his supervised release on the ground that (1) the court did not specifically identify what evidence it relied on or the reasoning it used to reach its decision and (2) that the court admitted evidence that should have been excluded under the Fourth Amendment's exclusionary rule. After careful review, we affirm.

## I.    BACKGROUND

Defendant pled guilty to credit card fraud in the Middle District of Pennsylvania. After successfully appealing his initial sentence, he was resentenced on July 10, 2013, to time served and a three-year term of supervised release. The terms of Defendant's supervised release forbade him from committing another federal, state, or local crime.

On December 15, 2015, Defendant and a female companion, Fatumata Gamby, made purchases at a supermarket in DeKalb County, Georgia, and they were detained and ultimately arrested on suspicion of fraudulent activity related to their purchases. On January 20, 2016, a probation officer filed a petition to revoke Defendant's supervised release, alleging that Defendant had violated the conditions of his release by forging financial transaction cards in violation of O.C.G.A. § 16-9-32. Defendant's case was subsequently transferred from the Middle District of Pennsylvania to the Northern District of Georgia, and a revocation hearing took place on August 8, 2016.

2

At the hearing, the Government called Detective Edwin Perkins of the DeKalb County Police Department as the only witness at the hearing.  Detective Perkins testified to being contacted by an off-duty officer, H. M. Belle, who was working as private security at the supermarket.  Belle told Detective Perkins that he had been alerted by a store employee that Defendant was engaging in suspected fraudulent activity at a self-checkout register.  After confronting Defendant and asking for identification and any other cards that he had used at the register, Belle detained Defendant when the cards he produced showed that the numbers embossed on the front of the card were not the same as on the back of the card, as they would have been were the card valid.  Among the items found on Defendant's person were two American Express cards and one RushCard (a prepaid Visa debit card), which were linked to accounts in names other than Defendant's.

When Detective Perkins arrived at the supermarket, he found Defendant detained in the back of a police car, with Gamby standing in the parking lot next to the police car.  Surveillance footage had shown that Defendant and Gamby entered the store together and were together at the register making the purchases in question.  Gamby requested the keys to Defendant's vehicle, which Defendant possessed, and Belle handed the keys to Gamby, who then began to drive away.  Detective Perkins instructed Belle to stop Gamby because the car was part of his investigation.  As Gamby stepped out of the car to give her identification to the

3

detective, the latter noticed a number of debit and gift cards in her wallet and in the vehicle. At this point, Detective Perkins decided to impound the car, and he searched the vehicle while waiting for the tow truck to arrive.

Among the items Detective Perkins found in the car were a plastic bag filled with about 140 counterfeit gift cards and a card reader/writer for encrypting and decrypting financial transaction cards. Detective Perkins subsequently obtained arrest warrants for Defendant for forgery of financial transaction cards and possession of a financial transaction card forgery device.

Defendant denied the Government's allegations in support of the revocation petition, and argued that the Government had not shown that he had used or attempted to use the cards found on his person. Defendant further argued that the detective did not have probable cause to search the vehicle. The district court found that the Government had carried its burden of showing that Defendant had violated the conditions of his supervised release and sentenced Defendant to six months' imprisonment followed by two years of supervised release. Defendant objected "to the sentence and to the findings by the court," as well as "to the admission of the evidence related to what we believe to be an illegal search." Defendant was released from custody on February 16, 2017, and is now serving the two-year term of supervised release.

4

## II.    DISCUSSION

### A.    Standard of Review

We review a district court's revocation of supervised release under an abuse of discretion standard.  *United States v. Frazier*, 26 F.3d 110, 112 (11th Cir. 1994). A district court may revoke a term of supervised release upon a finding "by a preponderance of the evidence that the defendant violated a condition of supervised release."  *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010) (quotations omitted); 18 U.S.C. § 3583(e)(3).

### B.    Whether Defendant's Due Process Rights Were Violated

Defendant argues that the district court violated his due process rights by failing to explicitly identify the conduct it relied upon in revoking his supervised release and by not explaining its reasons for doing so.

We have held that a defendant facing the revocation of supervised release is entitled to the due process protections granted to those facing revocation of parole, including "'a written statement by the factfinders as to the evidence relied on and reasons for [the revocation].'"  *See United States v. Copeland*, 20 F.3d 412, 414 (11th Cir. 1994) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).  "[O]ral findings, if recorded or transcribed, can satisfy [this requirement] when those findings create a record sufficiently complete to advise the parties and the reviewing court of the reasons for the revocation of supervised release and the

5

evidence the decision maker relied upon." *Id.* Implicit findings apparent from the record may satisfy this requirement. *See United States v. Lacey*, 648 F.2d 441, 444 (5th Cir. Unit A June 1981) (noting the possibility that remand may be unnecessary where the district court's implicit findings are clear from the record).[1]

The Government argues that, although Defendant objected at the end of the hearing "to the findings by the court," he did not raise his specific argument presented here:  that the district court failed to identify the conduct it relied upon and the reasons for revoking Defendant's supervised release.  We agree.

"Where a defendant fails to clearly state the grounds for an objection in the district court . . . we are limited to reviewing for plain error." *United States v. Carpenter*, 803 F.3d 1224, 1237–38 (11th Cir. 2015).  To preserve an issue for appeal, the objection must be "sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought." *United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) (quotations omitted). Defendant's general objection to the district court's findings did not alert the court to his specific objection regarding the court's alleged failure to specifically identify what evidence it relied on or the reasoning it used to reach its decision.  *See United States v. Parks*, 823 F.3d 990, 994–95 (11th Cir. 2016) ("It is now rote that 'a

---

[1] We adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

sweeping, general objection is insufficient to preserve specific sentencing issues for review.'" (quoting *Carpenter*, 803 F.3d at 1238) (alteration accepted)). Defendant's failure to fully apprise the court of his objections "deprived the court of the opportunity to consider (and if necessary correct) them." *See Carpenter*, 803 F.3d at 1238. This being so, our review is limited to plain-error review.[2]

Defendant cannot show that the district court erred, plainly or otherwise, because the record as a whole was sufficient to advise the parties and this Court of the district court's reasons for revoking Defendant's supervised release. *See Copeland*, 20 F.3d at 414. Though the district court was not overly detailed in its findings, it stated that it found the Government had shown by a preponderance of the evidence that Defendant had violated the terms of his release "by possessing these three cards." Further, the court noted that "[t]he Government has narrowed the issues greatly . . . and the proof is substantial."[3] This finding—taken along with Detective Perkins's testimony, the Government's arguments setting out the evidence supporting its arguments, and the arrest warrant (which cites a violation of § 16-9-32(f) and mentions the American Express cards and the RushCard)—

---

[2] To establish plain error, "there must be (1) an error (2) that is plain . . . (3) that has affected the defendant's substantial rights" and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013).

[3] At the hearing, the Government withdrew fraud accusations relating to other cards allegedly found on Defendant's person and also "ask[ed] the court to look at [the] three cards and not get into the search of the vehicle and whether it was appropriate or not."

clearly indicate that the district court relied on Defendant's possession of the three cards found on his person when it concluded that Defendant had violated the terms of his supervised release.  That Defendant may think the evidence is weak does not mean that the district court's findings were so elusive as to violate his due process rights.  Thus, we find no due process violation.

## C.    Whether the District Court Relied on Improper Evidence

Defendant also argues that the district court erred by allowing the Government to introduce evidence seized in violation of the Fourth Amendment, namely the evidence found in the vehicle and the cards seized from his person.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Typically, evidence obtained from a search conducted in violation of the Fourth Amendment must be excluded.  *See United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002).  Nevertheless, "[t]he fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies."  *See Herring v. United States*, 555 U.S. 135, 140 (2009).

Here, Defendant's argument misses the mark.  For starters, although he challenges the district court's reliance on the evidence obtained from the search of his car, the district court did not rely on this evidence when concluding that

8

Defendant had violated the terms of his supervised release.  Instead, at the request of the Government, the district court relied only on the evidence found on Defendant's person.  We therefore limit our discussion on appeal to the evidence seized from Defendant's person.

Defendant never objected to the constitutionality of the search of his person, however.  To be clear, he repeatedly objected to the admission of evidence from the search of his vehicle.  But he never argued that the evidence seized from his person should be excluded on the basis that the search violated his rights under the Fourth Amendment.  Because he makes this argument for the first time on appeal, we review for plain error.  *See United States v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001) ("We review arguments raised for the first time on appeal for plain error.").

Defendant cannot prevail under plain-error review.  "It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).  Even if the search of his person violated the Fourth Amendment—which we make no finding on here—Defendant has not relied on, nor have we found, any precedent from the Supreme Court or this Court holding that the exclusionary rule applies to federal

9

supervised release revocation hearings.  *Cf. Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 369 (1998) (holding that the exclusionary rule does not apply to exclude evidence obtained in violation of the Fourth Amendment in state parole revocation hearings).

In short, because it is not "clear under our current law" that the exclusionary rule applies to supervised release revocation hearings, Defendant cannot show that the district court committed plain error by admitting evidence seized from the search of his person.  *See United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000) ("We have held that an error cannot meet the plain requirement of the plain error rule unless it is clear under current law." (quotations omitted)).[4]

Accordingly, the district court's revocation of Defendant's supervised release is **AFFIRMED.**

---

[4]  Other Circuits that have addressed this issue have explicitly concluded that the exclusionary rule does not apply in supervised-release proceedings. *See, e.g., United States v. Charles*, 531 F.3d 637, 640 (8th Cir. 2008); *United States v. Armstrong*, 187 F.3d 392, 394 (4th Cir. 1999); *United States v. Montez*, 952 F.2d 854, 859 (5th Cir. 1992).