In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1372

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DERRICK PHILLIPS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 03-CR-30019—**Sue E. Myerscough**, *Judge.*

ARGUED NOVEMBER 6, 2018 — DECIDED JANUARY 28, 2019

Before WOOD, *Chief Judge*, and EASTERBROOK and KANNE, *Circuit Judges*.

WOOD, *Chief Judge*. In this appeal, Derrick Phillips is challenging the district court's decision to revoke his supervised release. He argues that the drug evidence used against him was the fruit of an unconstitutional search and should have been excluded. Guided by the Supreme Court's opinion in *Pennsylvania Board of Probation and Parole v. Scott*, 524 U.S. 357 (1998), which held that the exclusionary rule does not apply

to state parole-revocation hearings, the district court ruled that the exclusionary rule was similarly inappropriate for supervised-release-revocation hearings. The court then reviewed the evidence presented by the government and concluded that Phillips's supervised release should be revoked and that he should be sentenced to 36 months' imprisonment. Before this court, Phillips contests only the district court's ruling on the exclusionary rule issue. We affirm.

In 2010 Phillips began serving an eight-year term of supervised release stemming from a 2003 conviction for possession of cocaine base with intent to distribute. Phillips completed seven years of his term largely without incident. But on October 4, 2017, police officers in Quincy, Illinois, stopped him as he drove his car out of the parking lot of the town's Amtrak station. After a dog alerted the officers that drugs might be present in the car, they conducted a search, discovered a package containing approximately 196 grams of heroin, and arrested Phillips for possession with intent to distribute. The next month, Phillips's probation officer filed a petition to revoke his supervised release based on his violation of the condition that he not commit any crimes while on release.

In the district court, Phillips moved to suppress the evidence seized from his car. He alleged that the putative traffic violation that served as the basis of the stop was not, in fact, a violation of any traffic law at all. Accordingly, he argued, the police lacked probable cause for the stop and the resulting evidence should be suppressed. The district court did not reach the merits of this argument because it concluded that the reasoning in *Scott* left no room for the application of the exclusionary rule to supervised-release-revocation hearings. We agree with that ruling.

As the district court noted, two of the Supreme Court's rationales for declining to extend the exclusionary rule to the parole context "equally appl[y] to hearings for the revocation of supervised release." First, the Court expressed concern in *Scott* that the exclusionary rule would "alter the traditionally flexible, administrative nature of parole revocation proceedings." 524 U.S. at 364. Phillips contends that certain features of hearings for the revocation of supervised release make them more adversarial and trial-like than is true for parole hearings. These include the statutory right to counsel that defendants enjoy pursuant to Federal Rule of Criminal Procedure 32.1 and the requirement that defendants make specific objections in order to preserve them for appellate review, see *United States v. Raney*, 797 F.3d 454, 462 (7th Cir. 2015).

We can assume that Phillips is correct to observe that the Supreme Court's description of parole revocation hearings as "nonadversarial," *Scott*, 524 U.S. at 366, is an imperfect fit for supervised-release-revocation hearings (and for that matter, parole hearings). But the Court was well aware that the parole-revocation procedures are a part of the overall criminal justice process. And there is no escaping the fact that a hearing to determine whether supervised release should be revoked is substantially closer in form and substance to a hearing focusing on parole revocation than it is to a criminal trial. The Court emphasized in *Scott* that it has "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." 524 U.S. at 363. In other non-criminal-trial procedural contexts that have adversarial qualities and carry significant risks for defendants, the Court has found that the exclusionary rule is not worth the "substantial social costs" that would accompany it. *Id*., quoting *United States v. Leon*, 468 U.S. 897, 907 (1984). See *I.N.S. v. Lopez-Mendoza*, 468

U.S. 1032 (1984) (holding the exclusionary rule inapplicable to deportation proceedings); *United States v. Janis*, 428 U.S. 433 (1976) (holding the exclusionary rule inapplicable to civil tax proceedings). Unless and until the Supreme Court reconsiders this line of cases, we are not free to extend the exclusionary rule to hearings for the revocation of supervised release.

Second, the *Scott* Court expressed skepticism about the likelihood that the exclusionary rule would provide any added deterrence of unlawful police behavior if it were to be available in parole-revocation hearings, "because application of the rule in the criminal trial already provides significant deterrence of unconstitutional searches." *Scott*, 524 U.S. at 364. Phillips suggests that this is not so in the supervised release context, given that the government has (and often uses) the option to pursue revocation *in lieu of* a new prosecution. Thus, he argues, the underlying police conduct may go unchallenged in any forum. But the same option exists for parole-revocation hearings. Statistics indicate that there are more than 750,000 people on state parole, and another 137,000 on federal supervised release. See *Probation and Parole in the United States, 2016*, Bureau of Justice Statistics, https://www.bjs.gov/content/pub/pdf/ppus16.pdf (2016 state parole population of 760,392); *Post-Conviction Supervision – Judicial Business 2017*, United States Courts, http://www.uscourts.gov/statistics-reports/post-conviction-supervision-judicial-business-2016 (2016 federal supervisee population of 137,410). In both instances, when the reason for revocation is the commission of a new crime, the prosecuting authority has the option to revoke a defendant's parole or supervised release rather than pursue a new case. If the Supreme Court found the added deterrence benefits insufficient to justify the exclusionary rule in a parole hearing, logic

compels the conclusion that the same result must apply for supervised release.

That is enough to dispose of Phillips's appeal. We add, however, that his position would require us seriously to undermine our own circuit precedent and to break from the uniform consensus of our sister circuits. We have long held that the exclusionary rule does not apply at sentencing. *United States v. Brimah*, 214 F.3d 854 (7th Cir. 2000). And the Supreme Court has held that in the context of supervised release, "postrevocation penalties *relate to the original offense*," *Johnson v. United States*, 529 U.S. 694, 701 (2000) (emphasis added). See also *United States v. Boultinghouse*, 784 F.3d 1163, 1171 (7th Cir. 2015) (noting that "a revocation proceeding … focuses on the modification of a sentence already imposed and implicates the conditional (rather than absolute) liberty that the defendant enjoys as a result of that sentence"). It is difficult to see how we could continue to find the exclusionary rule inappropriate at the imposition of the *initial* sentence and yet to apply the rule in downstream hearings aimed at modifying that sentence.

Phillips argues that as a practical reality, when judges decide whether to revoke supervised release and (if so) how much prison time to impose, they are more focused on the new offense than on the underlying crime of conviction. But they are entitled to take the entire record into account at the time of revocation, not simply the facts as they existed at the time of the original sentence. That appears to be what happened for Phillips when the judge mentioned the ongoing "heroin epidemic" as a justification for her sentence. And the fact remains that as a legal matter, the Supreme Court has made crystal clear that revocation relates back to, and is a

function of, the sentence for the original offense. Ruling for Phillips would therefore call *Brimah* into question. As Phillips acknowledges, his position would also put us in direct conflict with every other court of appeals to consider the question. See *United States v. Hebert*, 201 F.3d 1103, 1104 (9th Cir. 2000) (holding exclusionary rule inapplicable to supervised release); *United States v. Armstrong*, 187 F.3d 392, 394 (4th Cir. 1999) (same); see also *United States v. Charles*, 531 F.3d 637, 640 (8th Cir. 2008) (holding the exclusionary rule inapplicable to supervised release in the absence of a showing of police harassment); *United States v. Montez*, 952 F.2d 854, 857 (5th Cir. 1992) (same). We decline to create such a split, nor need we address the exceptions contemplated by the Fifth and Eighth Circuits, as there has been no showing of harassment in this case.

Phillips suggested at oral argument that the main purpose of this appeal was to preserve this issue for Supreme Court review. That he has done. But until the Supreme Court addresses the point, his arguments in this court are foreclosed. The judgment of the district court is

AFFIRMED.