**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4783**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSHUA WAYNE RILEY,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.  Michael F. Urbanski, Chief District Judge.  (5:13-cr-00002-MFU-1)

Argued:  January 29, 2019                          Decided:  April 3, 2019

Before THACKER and RICHARDSON, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by published opinion.  Senior Judge Traxler wrote the opinion, in which Judge Thacker and Judge Richardson joined.

**ARGUED:** Lisa M. Lorish, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Grayson A. Hoffman, OFFICE OF THE UNITED STATES ATTORNEY, Harrisonburg, Virginia, for Appellee.  **ON BRIEF:** Frederick T. Heblich, Jr., Interim Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant.  Thomas T. Cullen, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

TRAXLER, Senior Circuit Judge:

Based on statements made by Joshua Wayne Riley to his probation officer, the district court determined that Riley violated the conditions of his supervised release and sentenced Riley to twenty months' imprisonment. Riley appeals, arguing that the use of his statements violated the Fifth Amendment and that, absent corroboration, the court erred by finding his statements sufficient to establish the violations. We find no reversible error and therefore affirm the judgment of the district court.

I.

Riley was convicted on federal drug-related charges in 2013. He was released from prison in 2016 and began serving a five-year term of supervised release. Although Riley tested positive for methamphetamine several times between March 2017 and February 2018, his probation officer did not seek revocation of his supervised release.

On March 16, 2018, Riley was stopped for a traffic infraction by local law enforcement officers, who found methamphetamine while searching Riley's car. He was charged by the state with possession of a controlled substance. Riley's federal probation officer thereafter petitioned the district court for an arrest warrant, alleging that Riley violated the terms of his supervised release by being arrested and by possessing a controlled substance. Riley was subsequently arrested for the supervised-release violation and taken into custody.

Riley's probation officer interviewed Riley while he was being held at the county jail. The officer did not inform Riley of his *Miranda*[1] rights before questioning him. Riley admitted to the officer that he had been using methamphetamine on a daily basis for several months and that, during the last month, he had been distributing an ounce of methamphetamine per week. Riley signed a written statement confirming his statements.

At the revocation hearing, Riley objected to the use of his statements to the probation officer. He contended that because he was in custody when interviewed by the probation officer, the failure to give him *Miranda* warnings required suppression of his oral and written statements. The district court rejected that argument, relying on *United States v. Armstrong*, 187 F.3d 392 (4th Cir. 1999), which held that the exclusionary rule does not apply in supervised-release revocation proceedings and that evidence obtained in violation of the Fourth Amendment is admissible in those proceedings. The district court also rejected Riley's argument that the government was required to present independent corroboration of his confession in order to establish that he distributed methamphetamine.

Relying on Riley's admissions, the court determined that Riley had violated the conditions of his supervised release by distributing a controlled substance. Drug distribution qualifies as a Grade A violation, *see* U.S.S.G. § 7B1.1(a)(1) & cmt. n.3; U.S.S.G. § 4B1.2(b), which in this case carried a Guidelines-recommended sentence of 24-30 months' imprisonment, *see* U.S.S.G. § 7B1.4(a). The court sentenced Riley to 20

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

months' imprisonment. If the court had instead found that Riley had only *possessed* a controlled substance, that would have qualified as a Grade B violation with a recommended sentence of 4-10 months. *See* U.S.S.G. §§ 7B1.1(a)(2), 7B1.4(a). Riley appeals, pressing the same issues he raised before the district court.

## II.

### A.

We turn first to Riley's claim that his Fifth Amendment rights were violated. The Fifth Amendment's Self-Incrimination Clause provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. The Clause speaks in terms of compelled testimony, and thus the protections it grants generally are not "self-executing." *United States v. Lara*, 850 F.3d 686, 692 (4th Cir. 2017). That is, a person seeking to invoke the Fifth Amendment privilege against self-incrimination generally "must assert the privilege rather than answer." *Minnesota v. Murphy*, 465 U.S. 420, 429 (1984). If the person voluntarily answers, the answer is not privileged. *See id.*

Exceptions to this general rule arise in certain situations that are viewed as inherently coercive. One exception involves custodial police interrogations, a setting that contains "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). In order to dissipate these coercive pressures, "the *Miranda* Court required the exclusion of incriminating statements obtained during custodial interrogation unless the suspect fails to claim the Fifth

4

Amendment privilege after being suitably warned of his right to remain silent and of the consequences of his failure to assert it." *Murphy*, 465 U.S. at 430. Another exception arises in "penalty" cases, where the assertion of the privilege results in the imposition of a penalty substantial enough to effectively "foreclose a free choice to remain silent." *Id.* at 434 (internal quotation marks and alteration omitted).

Although Riley answered the questions put to him by the probation officer rather than asserting his Fifth Amendment privilege, he contends that because he was in custody at the time of the interview, *Miranda* warnings were required.[2] And because no warnings were given, Riley contends the district court erred by refusing to apply the exclusionary rule and suppressing his oral and written statements. In Riley's view, *Armstrong*'s refusal to apply the exclusionary rule in revocation proceedings applies only to violations of the *Fourth* Amendment and does not preclude application of the exclusionary rule in the context of the *Fifth* Amendment. Riley contends that there are different interests at stake in cases involving a Fifth Amendment violation and that application of the exclusionary rule is required to vindicate those interests.

---

[2] A prisoner who is questioned by police is not necessarily in custody for purposes of the *Miranda* rule. *See Howes v. Fields*, 565 U.S. 499, 512 (2012) ("[S]tandard conditions of confinement and associated restrictions on freedom will not necessarily implicate the same interests that the Court sought to protect when it afforded special safeguards to persons subjected to custodial interrogation. Thus, service of a term of imprisonment, without more, is not enough to constitute *Miranda* custody."). Because the government does not question whether the circumstances of Riley's interview qualified as custody under *Howes*, we will assume for purposes of this opinion that Riley was in custody.

In our view, Riley's exclusionary-rule argument puts the cart before the horse. The exclusionary rule is a "judicially created remedy" applied in cases where certain constitutional violations have been committed. *Davis v. United States*, 564 U.S. 229, 238 (2011) (internal quotation marks omitted). Thus, before considering whether it would be proper to apply the exclusionary rule, we must first determine whether there has been a constitutional violation.

B.

Because the Self-Incrimination Clause focuses on the use of compelled evidence in a criminal case, the clause creates "a fundamental *trial right* of criminal defendants." *United States v. Verdugo–Urquidez*, 494 U.S. 259, 264 (1990) (emphasis added). Accordingly, "a violation of the constitutional right against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case." *Chavez v. Martinez*, 538 U.S. 760, 770 (2003) (plurality opinion) (emphasis omitted); *accord Verdugo-Urquidez*, 494 U.S. at 264 ("Although conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial."). Even with regard to statements made under circumstances that would otherwise be viewed as coercive, the Self-Incrimination Clause is violated *only* if those statements are used in a criminal trial. *See Chavez,* 538 U.S. at 767 (plurality opinion) ("Statements compelled by police interrogations of course may not be used against a defendant at trial, but it is not until their use in a criminal case that a violation of the Self–Incrimination Clause occurs . . . ." (citation omitted)); *id.* at 769 ("[M]ere coercion does not violate the

text of the Self–Incrimination Clause absent use of the compelled statements in a criminal case against the witness.").

Supervised release revocation proceedings, however, are *not* part of the underlying criminal prosecution. As the Supreme Court has explained, revocation of parole "deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Accordingly, "the revocation of parole is *not part of a criminal prosecution* and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Id.; see Murphy*, 465 U.S. at 435 n.7 ("Although a [probation] revocation proceeding must comport with the requirements of due process, *it is not a criminal proceeding*." (emphasis added)). That analysis is equally applicable to supervised release proceedings, which, as relevant to this case, are analogous to and largely indistinguishable from probation and parole revocation proceedings. *See Armstrong*, 187 F.3d at 394 (explaining that "parole and supervised release are not just analogous, but virtually indistinguishable" and that, as with parole revocation proceedings, the "full panoply of constitutional protections afforded a criminal defendant is not available" in supervised release revocation proceedings (internal quotation marks omitted)). It is therefore clear that, like parole and probation revocation proceedings, "supervised release revocation hearings are not criminal proceedings." *United States v. Tippens*, 39 F.3d 88, 89 (5th Cir. 1994) (per curiam) (internal quotation marks and alteration omitted); *accord United*

*States v. Ward*, 770 F.3d 1090, 1097 (4th Cir. 2014) ("[S]upervised release revocation proceedings are not considered part of a criminal prosecution.").

The government therefore contends that because revocation proceedings are not criminal proceedings, the use of Riley's statements did not violate the Self-Incrimination Clause of the Fifth Amendment. Riley does not dispute that revocation proceedings are not criminal proceedings. Instead, he contends that because he was in custody when questioned, the nature of the proceedings are irrelevant. We disagree.

Riley's argument depends largely on the Supreme Court's decision in *Minnesota v. Murphy*. The defendant in *Murphy* was sentenced to probation on state sexual misconduct charges, and the terms of his probation required him to participate in a treatment program for sexual offenders and to be truthful with his probation officer. *See Murphy*, 465 U.S. at 422. The defendant admitted to his treatment-program counselor that he had committed a rape and murder several years earlier, and the counselor reported the confession to the defendant's probation officer. The defendant again admitted the crimes during a meeting with his probation officer. The probation officer reported the confession to police, and the defendant thereafter was arrested and charged with murder. Over the defendant's objection, the probation officer testified at trial about his confession. The defendant was convicted of murder by the jury. *See id.* at 423-25.

Before the Supreme Court, the defendant argued that the admission of the probation officer's testimony violated his Fifth Amendment rights because he was not given *Miranda* warnings before being interviewed. The Supreme Court rejected these arguments. The defendant had answered the probation officer's questions rather than

8

asserting his Fifth Amendment privilege, and the Court concluded that none of the exceptions to the general rule applied. *See id.* at 440. In a footnote, however, the Court stated that "[a] different question would be presented if [the defendant] had been interviewed by his probation officer while being held in police custody or by the police themselves in a custodial setting." *Id.* at 429 n.5. In Riley's view, that footnote demonstrates that custodial status is the dispositive issue in a Fifth Amendment case. And because he was in custody when he confessed to the distribution offense, Riley contends that his case presents the "different question" anticipated by the *Murphy* Court.

We disagree with Riley's reading of *Murphy*. The confessions at issue in *Murphy* were used against the defendant in *a criminal prosecution* for the offenses to which he confessed. *See id.* at 424-25. Because the statements were used against the defendant in a criminal proceeding, the Fifth Amendment inquiry therefore depended on whether the statements were compelled. The Supreme Court held that the statements were not compelled because the defendant voluntarily answered without asserting the privilege, and none of the circumstances that make the privilege self-executing were present -- the defendant was not in custody when questioned, *see id.* at 430, and he was not subject to a substantial penalty for invoking his right against self-incrimination, *see id.* at 437. Thus, as the Court indicated in footnote 5, it would have indeed been a "different question" if the defendant had been in custody because, as previously discussed, the privilege against self-incrimination is self-executing in cases involving unwarned statements obtained through custodial interrogation.

9

In this case, however, whether Riley was in custody is not relevant because his statements were not used against him in a criminal proceeding. Under these circumstances, Riley's Fifth Amendment rights were not violated, a point on which the majority and the dissent in *Murphy* agreed. *See id.* 435 n.7 (explaining that because revocation proceedings are not criminal proceedings, "[j]ust as there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled self-incrimination available to a probationer"); *id.* at 441 (Marshall, J., dissenting) ("[B]ecause probation revocation proceedings are not criminal in nature and because the Fifth Amendment ban on compelled self-incrimination applies only to criminal proceedings, the possibility that a truthful answer to a question might result in the revocation of his probation does not accord the probationer a constitutional right to refuse to respond." (citation omitted)).

Riley also contends that the criminal or non-criminal nature of the revocation proceeding is irrelevant because the Fifth Amendment privilege against self-incrimination applies in civil as well as criminal proceedings.

Riley's observation is at least partially correct. The privilege against self-incrimination applies in non-criminal proceedings in the sense that a witness in such proceedings may assert the privilege rather than give an answer that "might incriminate him *in future criminal proceedings*." *Murphy*, 465 U.S. at 426 (emphasis added; internal quotation marks omitted)); *accord Maness v. Meyers*, 419 U.S. 449, 461-62 (1975) (explaining that the Fifth Amendment privilege against self-incrimination may be asserted if one is "compelled to produce evidence which later may be used against him as

an accused in a criminal action"). The question in this case, however, is not when the privilege may be *asserted*, but when it is *violated*. And as to that question, the answer is clear: The Fifth Amendment privilege against self-incrimination is violated *only* when compelled statements are used against the witness in a criminal proceeding. *See Chavez*, 538 U.S. at 770 ("Although our cases have permitted the Fifth Amendment's self-incrimination privilege to be asserted in noncriminal cases, that does not alter our conclusion that a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case.") (plurality opinion) (citations omitted); *Verdugo–Urquidez*, 494 U.S. at 264 ("The privilege against self-incrimination guaranteed by the Fifth Amendment is a *fundamental trial right of criminal defendants*. Although conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial." (emphasis added) (citation omitted)). Because the use of Riley's admissions did not violate the Self-Incrimination Clause of the Fifth Amendment, the district court did not err in considering them.

III.

We turn now to Riley's claim that the government was obliged to present evidence corroborating his admission that he had distributed methamphetamine.

"It is beyond dispute that a criminal defendant's conviction cannot rest entirely on an uncorroborated extrajudicial confession." *United States v. Stephens*, 482 F.3d 669, 672 (4th Cir. 2007); *see Opper v. United States*, 348 U.S. 84, 89 (1954) ("In the United States our concept of justice that finds no man guilty until proven has led our state and federal

11

courts generally to refuse conviction on testimony concerning confessions of the accused not made by him at the trial of his case."). Riley contends that the government's only evidence of drug distribution was his own admissions to his probation officer. Because there was no independent corroboration of his admissions, Riley argues that the evidence was insufficient to show that he committed the Grade A offense of distribution. We disagree.

The requirement that an out-of-court admission of criminal activity be corroborated is a rule applicable to *criminal* proceedings. *See Stephens*, 482 F.3d at 672; Fed. R. Evid. 804(b)(3)(B). In civil cases, such statements are generally admissible as admissions against penal interest without additional corroboration. *See* Fed. R. Evid. 804(b)(3)(A). As we have already discussed, supervised release revocation proceedings are not criminal proceedings, and a determination that a person violated the terms of supervised release does not amount to a conviction for a criminal offense. *See United States v. Hill*, 48 F.3d 228, 232 (7th Cir. 1995) ("The violation of a condition of supervised release is not a crime as such, but it is a breach of trust, and a ground for revocation of supervised release." (citation and internal quotation marks omitted)). Thus, the very description of the corroboration rule – an uncorroborated extrajudicial confession cannot alone support a criminal conviction – demonstrates that the rule has no application to supervised release revocation proceedings, where courts are permitted "to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 489. Under these

12

circumstances, we agree with the Ninth Circuit that the corroboration rule is "ill-suited" to revocation proceedings. *United States v. Hilger*, 728 F.3d 947, 950 (9th Cir. 2013).

Moreover, "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). If the goals of supervised release are to be met, it is critical that the defendant cooperate with his probation officer and comply with the conditions of supervised release, including the standard condition to provide truthful information to his probation officer. Prohibiting revocation without corroboration of a defendant's statements would undermine the requirement for truthfulness and unduly tie the hands of the supervising officer.

Accordingly, because supervised release revocation proceedings are not criminal proceedings, the government was not required to present evidence corroborating Riley's admissions to his probation officer. *See Morrissey*, 408 U.S. at 489 ("We emphasize there is no thought to equate . . . revocation to a criminal prosecution in any sense."). The district court therefore did not err in relying on Riley's admissions to conclude that Riley committed a Grade A violation by distributing methamphetamine, and those admissions were sufficient to support the district court's conclusions. *See* 18 U.S.C. § 3583(e)(3) (violation of conditions of supervised release must be established by a preponderance of the evidence); *United States v. Padgett*, 788 F.3d 370, 374 (4th Cir. 2015).

IV.

13

In sum, we hold that because supervised release revocation proceedings are not criminal proceedings, the introduction of unwarned admissions made by Riley to his probation officer did not violate Riley's rights under the Self-Incrimination Clause of the Fifth Amendment. And because the proceedings are not criminal, the government was not required to present evidence corroborating Riley's admissions. We therefore affirm the district court's judgment.

*AFFIRMED*