**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-1560**

———————

ADOLFO ACEVEDO IBARRA,

        Petitioner,

   v.

PAMELA JO BONDI, Attorney General,

        Respondent.

———————

On Petition for Review of an Order of the Board of Immigration Appeals.

———————

Argued:  September 27, 2024                 Decided:  April 29, 2025

———————

Before KING and RICHARDSON, Circuit Judges, and FLOYD, Senior Circuit Judge

———————

Petition denied by published opinion.  Judge Richardson wrote the opinion, in which Judge King and Judge Floyd joined.

———————

**ARGUED:**  Lauren Whitney Thwaites, THE LAW OFFICES OF MARK J. DEVINE, LLC, Charleston, South Carolina, for Petitioner.  Robert Dale Tennyson, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:** Mark J. Devine, THE LAW OFFICES OF MARK J. DEVINE, LLC, Charleston, South Carolina, for Petitioner.  Brian Boynton, Principal Deputy Assistant Attorney General, Paul Fiorino, Senior Litigation Counsel, Emily E. Wakeman, Student Intern, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

RICHARDSON, Circuit Judge:

At an immigration hearing, Adolfo Ibarra admitted that he was removable from this country, and he was ordered removed.  Later, though, he asked for grace.  His removal could have been canceled if, among other things, the government determined that he had good moral character and that removal would have caused hardship to his family.  But an immigration judge determined Ibarra lacked good moral character because he had previously committed fraud.  So removal cancellation was unavailable to him.  Because that decision was based on substantial evidence, we affirm it.  Ibarra also claims his Fifth Amendment rights were violated.  But finding that those theories fall flat and were waived, we reject them.

## I.      Background

Adolfo Acevedo Ibarra is a Mexican citizen who entered the United States illegally.[1] The Board of Immigration Appeals determined that Ibarra started using the identity of a friend and U.S. citizen, Raul Cabrera, in 2009.[2]  He used this stolen identity to get a Social Security card, a driver's license, and the title for a vehicle.  He also used Cabrera's identity to buy a house, secure a mortgage from a bank, and obtain homeowner's insurance.  He continued this misuse until 2014 when he was detained for fraudulently using a Social Security number.

---

[1] Unless otherwise noted, the facts in this section represent findings by the BIA.

[2] We consider only the ten years preceding Ibarra's application for removal cancellation.  *See* 8 U.S.C. § 1229b(b)(1)(A)-(B).

2

Ibarra was indicted for fraud related to this conduct, but he pleaded guilty to illegal entry to resolve those charges. Ibarra was placed on probation, and there he remained until September 2016.

In 2014, the Department of Homeland Security initiated removal proceedings against Ibarra. At a hearing, Ibarra admitted DHS's allegations and agreed that he was removable. In a later hearing, however, he argued that his removal should be canceled because removing him would bring hardship upon his four U.S.-citizen children.

During a third hearing on removal cancellation, Ibarra's attorney twice attempted to assert the Fifth Amendment privilege against self-incrimination on his behalf. But these objections were overruled, and Ibarra continued answering questions without asserting the privilege himself or asking to consult his attorney.

The immigration judge denied Ibarra's application for cancellation of removal after determining that Ibarra failed to establish good moral character, a predicate qualification. *See* 8 U.S.C. § 1229b(b). This decision was based on the catchall provision in 8 U.S.C. § 1101(f). As the IJ explained, Ibarra's "significant negative criminal history which relates to his purchase of a home and also the obtaining of a fraudulent identity" outweighed any proof of Ibarra's good character. Ibarra appealed that decision to the Board of Immigration Appeals, which affirmed the immigration court's denial of removal cancellation. Ibarra now asks us to review that decision.

## II.    Discussion

### A.    Substantial evidence supported the IJ's moral-character finding

Whether Ibarra lacked good moral character under 8 U.S.C. § 1229b raises a mixed question of law and fact. By statute, the "Attorney General" has the discretion to cancel a decision to remove an alien if that alien "has been a person of good moral character during" his time in the United States and, among other things, the alien "establishes that removal would result in exceptional and extremely unusual hardship." 8 U.S.C. § 1229b(b)(1)(B), -(D). While "the ultimate decision whether to grant cancellation of removal is discretionary in nature" and belongs to the Attorney General if these "statutory eligibility requirements" are satisfied, the requirements themselves "do not speak of discretion." *Gonzalez Galvan v. Garland*, 6 F.4th 552, 560 (4th Cir. 2021). Naturally, whether the requirements are met depends on facts. This "application of a statutory legal standard . . . to an established set of facts" presents a "mixed question of law and fact." *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024); *see also Rabkin U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 394 (2018).[3]

This mixed question is reviewed for substantial evidence. *See Garcia v. Holder*, 732 F.3d 308, 312 (4th Cir. 2013). Accordingly, "[t]o reverse" the IJ's decision that Ibarra lacked good moral character, "we must find that the evidence before the BIA 'was so

---

[3] We generally lack jurisdiction to review removal decisions. 8 U.S.C. § 1252(a)(2). Despite this jurisdictional bar, there is an exception permitting review of "constitutional claims or questions of law raised upon a petition for review . . . in accordance with this section." *Id.* § 1252(a)(2)(D). And mixed questions of law and fact, like whether an alien has good moral character under § 1229b, lie within this statutory exception. *See Wilkinson*, 601 U.S. at 212, 217.

compelling that no reasonable factfinder could'" have reached the IJ's conclusion. *Id.* (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 483–84 (1992)); *see also Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477 (1951).  Thus, "even if we find the record plausibly could support two results—the one the IJ chose and the one the petitioner advances— reversal is only appropriate where the court finds that the evidence not only supports the opposite conclusion, but *compels* it." *Herrera-Alcala v. Garland*, 39 F.4th 233, 244 (4th Cir. 2022) (cleaned up).

In determining what "good moral character" means, we start with the statutory text. Section 1101(f) defines "good moral character" in two ways.  First, it provides eight examples of conduct or circumstances that categorically preclude a good-moral-character finding:  for example, that someone is "a habitual drunkard," § 1101(f)(1); that his income is derived principally from illegal gambling, *id.* § 1101(f)(4); that he was convicted of or admitted to a "crime of moral turpitude," *id.* § 1101(f)(3) (citing 8 U.S.C. § 1182(a)(2)); or that he gave false testimony to get immigration benefits, *id.* § 1101(f)(6).  Second, it supplements these examples with a catchall:  "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." *Id.* § 1101(f).

Because the immigration court and BIA found that Ibarra lacked good moral character based on the catchall provision, we look to whether substantial evidence supported that determination. *See Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80,

87 (1943).[4]  It did.  Even if Ibarra's positive qualities would have *allowed* the IJ to find that he had good moral character, there was plenty to support the IJ's conclusion that he didn't.  Ibarra was charged with appropriating another person's identity to obtain false government documents and defrauding financial institutions.  The BIA found that Ibarra engaged in these actions, which are crimes.  "And whatever else one might say about that phrase, . . . a crime involving 'fraud [as] an ingredient' qualifies as a crime involving 'moral turpitude.'"  *Pereida v. Wilkinson*, 592 U.S. 224, 229 (2021) (quoting *Jordan v. De George*, 341 U.S. 223, 227 (1951)).[5]

True, Ibarra was never *convicted* for those crimes.  And true again, the fraud would preclude a good-moral-character finding under § 1101(f)(3) only if Ibarra were convicted of it (or admitted it).  But as § 1101(f)'s other examples make clear, a conviction is not a prerequisite to an IJ's bad-character finding.  § 1101(f)(1), -(4), -(6), -(9).  We will not read such a requirement into § 1101(f)'s residual clause.  *Cf. Fischer v. United States*, 603 U.S. 480, 490–91 (2024) (using a statute's enumerated examples as guideposts in interpreting a residual clause).  Just as an IJ can find bad moral character based on habitual drunkenness

---

[4] But for *Chenery*, this exercise would be unnecessary.  Ibarra has, several times, admitted to the fraudulent use of Cabrera's identity.  *See, e.g.*, J.A. 179 ("I made the decision to use the false identity.").  His fraudulent uses are crimes of moral turpitude.  There is thus a strong argument that the IJ *had* to find that he lacked good character under § 1101(f)(3), which covers crimes of moral turpitude *admitted* by the alien.  Under *Chenery*, however, our review is limited to whether substantial evidence supported the BIA's determination under the catchall provision.  *See* 318 U.S. at 87.

[5] Although a lack of good moral character can be found based on various types of conduct, perhaps not all involving turpitude, we do not doubt that turpitude is *among* the types of conduct that can justify such a finding.  *See* § 1101(f)(3) (citing 8 U.S.C. § 1182(a)(2)).

6

even if the alien was never convicted for it, so too can an IJ find bad moral character based on other conduct, like fraud. The finding that Ibarra committed fraud may not *absolutely bar* a good-moral-character conclusion the way a conviction would under § 1101(f)(3), but it still *permits* a finding that Ibarra lacked good moral character.[6]

## B.    Ibarra's Fifth Amendment challenge fails

Ibarra next suggests that the government violated his Fifth Amendment privilege against self-incrimination during the removal hearing. Without ever asserting the privilege, Ibarra testified at the hearing, both in response to the government and in response to the IJ's questioning. His attorney attempted to assert the privilege on his behalf, but the IJ overruled those objections, and Ibarra continued to answer.[7] With the benefit of hindsight, Ibarra now realizes he should have listened to his lawyer. But he didn't and so cannot claim the privilege now.[8]

---

[6] While by no means controlling, *see Loper Bright v. Raimondo*, 603 U.S. 369, 412–13 (2024), we find persuasive the Department of Homeland Security's view that acts for which a person has not been convicted can provide a valid basis for finding a lack of good moral character. *See* 8 C.F.R. § 316.10(a)(2). We also note agreement with our sister circuits as to these points, though we recognize the different reasoning they employed. *See, e.g.*, *United States v. Suarez*, 664 F.3d 655, 661 (7th Cir. 2011) (applying deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)); *Sumbundu v. Holder*, 602 F.3d 47, 55–56 (2d Cir. 2010).

[7] Ibarra also claims the immigration judge erred by not allowing his attorney to consult him during the hearing. But neither Ibarra nor his counsel asked to consult one another, much less asserted any error by the immigration court in failing to let them do so below.

[8] We assume without deciding that the privilege against self-incrimination was relevant to this proceeding. It generally applies "'in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory,' in which the witness reasonably (Continued)

7

The Constitution guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Yet "[i]f a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself." *Garner v. United States*, 424 U.S. 648, 654 (1976). For this reason, the "burden" "l[ay] with" Ibarra to invoke his rights and refuse to testify. *Id.* at 655. He did neither. So "any incriminations properly are viewed as not compelled." *Id.*; *see also United States v. Riley*, 920 F.3d 200, 204 (4th Cir. 2019) (explaining that someone "seeking to invoke the Fifth Amendment privilege against self-incrimination generally 'must assert the privilege rather than answer'" (quoting *Minnesota v. Murphy*, 465 U.S. 420, 429 (1984)). Because Ibarra testified without any compulsion to do so, the privilege against self-incrimination is irrelevant to his claim.

Ibarra responds that his counsel invoked his privilege for him, and so his testimony was still compelled. This reply fails for two reasons.

First, lawyers cannot invoke this self-incrimination privilege for their clients. "[T]he immunity provided by the 5th Amendment against self-incrimination is personal to

---

believes that the information sought . . . could be used in a subsequent state or federal criminal proceeding." *United States v. Balsys*, 524 U.S. 666, 671–72 (1998) (quoting *Kastigar v. United States*, 406 U.S. 441, 444–45 (1972)). But when an alien in a removal proceeding "makes no such claim"—i.e., when he does not argue that his testimony could be used in a future criminal proceeding—the privilege is inapplicable to the removal proceeding. *Id.* at 672. And here Ibarra has made no such claim. Nowhere in his brief does Ibarra argue that the privilege was relevant because he may have implicated himself in future criminal proceedings. That's a problem for him: Although his counsel appears to have made this claim below, "contentions not raised in the argument section of the opening brief are abandoned" on appeal. *Suarez-Valenzuela v. Holder*, 714 F.3d 241, 249 (4th Cir. 2013) (quotation omitted and emphasis deleted).

8

the witness himself." *McAlister v. Henkel*, 201 U.S. 90, 91 (1906). That is, it is "one which normally must be claimed by the individual who seeks to avail himself of its protection." *Communist Party of United States v. Subversive Activities Control Bd.*, 367 U.S. 1, 107 (1961); *see Riley*, 920 F.3d at 204. To be sure, Ibarra's counsel tried to get him to exercise his rights. But the client must invoke those rights himself. *See U.S. ex rel. Vajtauer v. Comm'r of Immigr.*, 273 U.S. 103, 107, 113 (1927); *United States v. Carter*, 87 F.4th 217, 227 (4th Cir. 2023). Counsel's invocation does not count.

Second, even if counsel could have invoked the privilege, it is a "fundamental legal principle that a [client] must be allowed to make his own choices about the proper way to protect his own liberty." *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017). Ibarra heard his lawyer's advice and proceeded to testify anyway. So even if counsel could have invoked Ibarra's privilege, Ibarra overrode counsel's invocation by continuing to testify.

Ibarra's Fifth Amendment self-incrimination claim therefore fails.

*          *          *

Ibarra illegally entered this country. He was caught and ordered to be deported. The immigration judge determined that he is ineligible for cancellation of removal, and substantial evidence supports that determination. What's more, Ibarra has no colorable Fifth Amendment claims. Thus, Ibarra's petition must be

*DENIED*.

9